[No. 52558-7. En Banc. October 2, 1986.]

BURIEN BARK SUPPLY, ET AL, *Respondents*, v.
KING COUNTY, *Appellant*.

*Norm Maleng, Prosecuting Attorney,* and *Phyllis K. Macleod, Deputy,* for appellant.

*Cohen, Keegan & Goeltz, P.S.,* by *John E. Keegan, Gail Mautner,* and *Susan R. Agid,* for respondents.

UTTER, J.—King County officials ordered Burien Bark Supply to cease use of a bark sorter on a site zoned for general commercial use. The trial court reversed the order. We affirm the trial court and hold that the zoning ordinance the County sought to enforce is unconstitutionally vague in its application to Burien Bark Supply.

Burien Bark Supply sells beauty bark both retail and wholesale. The business is located on First Avenue South, a 4-lane major arterial in King County. The business site abuts residential property that contains single-family homes, but the site itself is zoned "C-G" (general commercial). The owners of Burien Bark Supply purchased the site

in reliance on assurances by King County officials that their intended use was permitted in the general commercial zone.

The general commercial zone is described in King County Code (hereinafter KCC) chapter 21.30. The chapter describes the purpose of the zone:

> [T]o provide for the location of . . . enterprises which may involve some on–premises retail service but with the outside activities and display or fabrication, assembling and service features, *including manufacturing and processing in limited degree* and which uses, if permitted to locate in strictly on–premises retail and service areas, would introduce factors of heavy trucking and handling of materials that destroy the maximum service and attraction of strictly retail areas.

(Italics ours.) KCC 21.30.010. The chapter also provides "performance standards" that describe in general terms characteristics of uses that are appropriate for the zone.[1] Finally, the chapter lists retail, fabrication, wholesale, and storage uses that are specifically permitted in the zone.

Burien Bark Supply uses the site to sort and bag as well as to sell beauty bark. A small office and two truck loaders are located on the site, as are large piles of bark. Large semitrailer trucks deliver material to the site. In 1979, Burien Bark Supply also bought a sorter for the site. The sorter consists primarily of a large tumbler apparatus, stands about 20 feet high, and is used to sort the bark into three sizes.

In 1980 and 1981, King County Code enforcement inspectors checked the Burien Bark Supply site in response to complaints from neighbors. The neighbors complained of

---

[1]KCC 21.30.010 provides in part: "The uses enumerated in this classification are considered as having common or similar performance standards in that:

"A. They are heavier in type than those uses permitted in the strictly business classifications and yet are measurably lighter uses than those first permitted in the industrial classifications;

". . .

"D. They involve a greater handling of materials and commodities and more trucking than uses permitted in a strictly retail area, but do not require large sites nor involve as much handling of materials and commodities or heavy trucking as uses first permitted in strictly industrial areas;"

excessive dust from the sorting process. On both occasions King County concluded that no zoning violations existed.

In November 1982, neighbors again complained of both dust and noise from the site. An investigation ensued. A county interoffice memorandum of March 1983 reveals that at least one county employee concluded that the sorter's sifting process constituted a "limited" and "accessory" process that was permitted within the C–G zone. Nevertheless, in May 1983 the building and land development division of the King County Department of Planning and Community Development notified Burien Bark Supply that its entire operation violated the general commercial zoning classification. In June 1983, the County issued a notice and order to correct code violations that were described as "the stockpiling, storage, screening, sifting, loading and sales of bark together with equipment storage as a primary use." Return to Writ of Certiorari, at 28.

Burien Bark Supply appealed the order to a zoning and subdivision examiner. After a full hearing the examiner reversed part of the order. The examiner concluded that the County was estopped from reversing its earlier assertion that the supply business was a permitted use in the C–G zone and ruled that Burien Bark Supply could continue its sales on the site. However, the examiner also concluded that the use of the sorter resulted in processing that violated the restrictions of the C–G zone, and sustained the County's order that the business must remove the sorter.

Burien Bark Supply appealed the order to superior court by writ of certiorari. The court ruled in favor of Burien Bark Supply. The court concluded that (1) the ordinance describing the uses permitted in the general commercial zone was unconstitutionally vague as applied to the Burien Bark Supply site, (2) the County was estopped from ordering removal of the sorter, and (3) the examiner's decision was arbitrary, capricious, and contrary to law.

In October 1984, the County appealed the court's decision to the Court of Appeals. In March 1986, the case was transferred to this court.

■ An ordinance is unconstitutional when it forbids conduct in terms so vague that persons of common intelligence must guess at its meaning and differ as to its application. *Myrick v. Board of Pierce Cy. Comm'rs,* 102 Wn.2d 698, 677 P.2d 140, 687 P.2d 1152 (1984); *Grant Cy. v. Bohne,* 89 Wn.2d 953, 577 P.2d 138 (1978). Such an ordinance violates the essential element of due process of law— fair warning. *State v. White,* 97 Wn.2d 92, 640 P.2d 1061 (1982); *State v. Reader's Digest Ass'n,* 81 Wn.2d 259, 501 P.2d 290 (1972), *appeal dismissed,* 411 U.S. 945 (1973). In the area of land use a court does not look solely at the face of the ordinance; the language of the ordinance is also tested in its application to the person alleged to have violated it. *Grant Cy. v. Bohne, supra.* The purpose of the void for vagueness doctrine is to limit arbitrary and discretionary enforcement of the law. *State v. White, supra; Grant Cy. v. Bohne, supra.*

The trial court held that the prohibition of processing beyond a "limited degree" in KCC 21.30.010 is so vague that the County cannot constitutionally prohibit Burien Bark Supply from using its sorter. We agree. The code does not explain how a procedure is to be deemed "limited." We cannot tell, for example, whether one should consider the number of steps in the process; the percentage of business time devoted to the process; the extent to which the process is necessary for the overall business; or the physical size of the process. The code unconstitutionally leaves to the discretion of county officials the substance of determining what activities are prohibited.

The County argues that the statute is not unconstitutionally vague because the performance standards "enable administrators to determine appropriate uses within the designated zone classifications." Brief of Appellant, at 23. The County argues that Washington courts have upheld the necessity and validity of interpreting land use regulations, and that

[t]he vagueness test does not require a statute to meet impossible standards of specificity. If, based on common

practice and understanding and in the context of well–defined usage, a statute provides fair notice of what it requires, then it will not be subject to a procedural due process challenge on grounds of vagueness.

(Citation omitted.) *Chicago, M., St. P., & P. R.R. v. State Human Rights Comm'n,* 87 Wn.2d 802, 805, 557 P.2d 307 (1976).

Neither the arguments made nor the decisions cited by the County are persuasive in this case. The general, subjective performance standards of the code do not reduce the discretion of county officials to a constitutionally acceptable degree. Nor do "common practice and understanding" help KCC 21.30.010 provide fair notice of what it prohibits. The County cannot argue that a common practice and understanding exists when county employees could not agree among themselves whether the "process" at Burien Bark Supply was "limited." A citizen should be able to determine the law by reading the published code. A citizen should not be subjected to *ad hoc* interpretations of the law by county officials.

Instead, *Grant Cy. v. Bohne, supra,* is more applicable to this case. In *Grant Cy.* the County used an ordinance that prohibited "buildings" in a certain district to prohibit the location of a mobile home in that district. We concluded that the ordinance did not give fair warning that it prohibited a mobile home. We also concluded that the ordinance unconstitutionally allowed county officials the discretion to decide exactly what the ordinance prohibited, saying

the decision to prohibit a type of housing may never be left to the whim of local officials. The county must provide ascertainable standards to guide local officials who enforce zoning ordinances in order to satisfy due process.

89 Wn.2d at 957. We conclude in this case that KCC 21.30-.010 similarly did not provide constitutionally sufficient notice that it prohibited the use of a bark sorter by Burien Bark Supply.

This case could have been avoided had either party availed itself of the codified procedure for clarifying ambig-

uous aspects of the code. KCC 21.46.050 provides a procedure for classifying unlisted uses and clarifying ambiguities:

The council recognizes that it is not possible to enumerate and classify every use to which land may be devoted . . . and that ambiguity may exist with reference to the appropriate and consistent classification of a use. Therefore:

A. When any known and identifiable use is not listed as a permissible use in any classification; or

B. When any use has now come into existence by reason of any technical development in the trades, sciences and equipment; or

C. When any use already listed in the classification . . . should be placed in the more restrictive classification, it shall be the responsibility and duty of the planning department to ascertain all pertinent facts relating to any such use and make what it deems to be the appropriate recommendation for classification. Any proceedings under this section shall be processed as an amendment.

In light of our disposition of the case we need not reach the additional grounds on which the trial court relied. For the reasons discussed above the judgment of the court is affirmed.

DOLLIVER, C.J., and BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.