[No. 54670-3.   En Banc.   January 26, 1989.]

THE TOWN OF CLYDE HILL, *Respondent,* v. DUANE ROISEN, *Petitioner.*

*Davis, Wright & Jones,* by *Jeff Belfiglio,* for petitioner.

*Powe, Housh, Bingham & Allen,* by *Thomas W. Bingham,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

At issue in this case is whether a town's "naturally grown fence" ordinance is unconstitutionally vague as applied to the defendant's fir trees.

The plaintiff herein is the Town of Clyde Hill. In 1978, Duane Roisen, defendant herein, landscaped his Clyde Hill home with approximately 70 fir trees which were 16 to 20 feet tall. The defendant planted 13 of the trees at distances of 2 to 12 feet from the eastern boundary of his property where it abutted the property of his neighbor, Mr. Gayte. At the time the trees were planted, as well as on later occasions, this neighbor informed the defendant that the trees threatened his view.

In 1983, the neighbor lodged a complaint about the trees with the Town of Clyde Hill. In response to his complaint, three town officials viewed defendant's trees to see if he was violating the Clyde Hill "naturally grown fence" ordinance. This ordinance, Clyde Hill Code (hereinafter CHC) § 17.36.160, provides as follows:

> Constructed fences shall not exceed six feet in height measured from the original grade, except as permitted under Chapter 17.40 for recreational facilities. Whenever a fence is placed on top of a retaining wall, the height of

the fence and the retaining wall together shall not exceed six feet as measured from the original grade, except as permitted under Chapter 17.40 for recreational facilities. *Naturally grown fences shall not exceed eight feet in height as measured from the original grade.* Fences as defined in Chapter 17.08 are not subject to the setback requirements as set forth elsewhere in this title, except that they shall not restrict street traffic visibility, as shown on the drawing for intersection visibility requirements attached to Ordinance 74 and on file in the office of the town clerk; provided further, that fences for recreational facilities that exceed six feet in height are subject to the setback requirements governing fences in excess of six feet in height including the retaining wall, permitted under Chapter 17.40.

(Italics ours.) Another code section defines "fence" in this manner:

A "fence" shall be any barrier which is naturally grown or constructed for purposes of confinement, means of protection or use as a boundary.

CHC 17.08.200. Violation of the ordinance is a misdemeanor.

Each of the officials who viewed the defendant's trees determined that they violated the naturally grown fence ordinance. The town building inspector looked at the trees' height and continuity of growth in making his determination. The police chief looked at whether the trees "gave the appearance of being a fence." The mayor viewed the trees to determine whether they constituted a naturally grown barrier and whether they were for purposes of confinement, protection or boundary. When informed of the officials' determinations, the defendant took the position that the trees were not a living fence.

The Town of Clyde Hill charged Mr. Roisen, as defendant, with violating the naturally grown fence ordinance in March 1985. After trial in the Bellevue District Court, the judge viewed the defendant's trees and found him in violation of the ordinance. The trial court explained the decision as follows:

The question at this point is whether or not these particular trees, which are clearly over the eight–foot limit, either confine, first of all do they constitute a fence, whether they confine for purposes of confinement, means of protection or use as a boundary. I've looked at the trees and I'm satisfied, if I were to define this based on my observation I would say *it was a wall,* it was not a fence, but wall is more massive and dense. I'm satisfied that this does in fact confine, although there can be . . . clearly small animals can get through relatively easy, human beings can get through but clearly they are restricted. As a means of protection, it may be protection against the elements, but I'm not persuaded by that particular element. And *clearly this is a boundary that sets off the Gaytes property from the Roisen property and after viewing it I'm satisfied that it meets the city's definition of a fence, therefore, maintenance of it is in violation of the ordinance.*

(Italics ours.)

The trial court also upheld the constitutionality of the naturally grown fence ordinance and further ruled that it did not require proof of a specific intent to violate the ordinance at the time of planting the trees. The trial court deferred sentencing on condition that the defendant remove six of the trees.

The defendant appealed the District Court's ruling to the King County Superior Court, which overturned his conviction on the ground that the naturally grown fence ordinance was unconstitutionally vague. The Court of Appeals reversed the Superior Court and reinstated the defendant's conviction.[1] The defendant then sought discretionary review in this court.

Two issues are presented.

## ISSUES

ISSUE ONE. Is the naturally grown fence ordinance unconstitutionally vague as applied to the defendant's fir trees?

---

[1] *Clyde Hill v. Roisen,* 48 Wn. App. 769, 740 P.2d 378 (1987), *review granted,* 110 Wn.2d 1007 (1988).

Issue Two. Does the naturally grown fence ordinance require a specific intent to confine, protect or mark a boundary or is it violated by the presence of a planting which forms a barrier regardless of the landowner's intent?

### Decision

Issue One.

Conclusion. The naturally grown fence ordinance is not void for vagueness because it provides persons of common intelligence with adequate notice of the conduct it makes criminal, and because it contains standards that prevent arbitrary enforcement.

█ A statute is void for vagueness if its terms are "so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application."[2] The test for vagueness, of course, rests upon important considerations of adequate notice to citizens and adequate standards that will prevent arbitrary enforcement.[3]

█ In land use cases, the court looks not solely at the face of the ordinance to determine its validity, but also at its application to the person alleged to have violated it.[4] In such cases, "the court must determine whether the ordinance provides the defendant with 'fair warning of the criminality of his own conduct', and whether the statute presents the danger of an *ad hoc* determination of guilt resulting from inadequate statutory guidelines." (Citations omitted.)[5] Impossible standards of specificity are not

---

[2]*Myrick v. Board of Pierce Cy. Comm'rs*, 102 Wn.2d 698, 707, 677 P.2d 140, 687 P.2d 1152 (1984); *State v. Aver*, 109 Wn.2d 303, 306, 745 P.2d 479 (1987).

[3]*State v. Maciolek*, 101 Wn.2d 259, 264, 676 P.2d 996 (1984); *State v. Hilt*, 99 Wn.2d 452, 454, 662 P.2d 52 (1983).

[4]*Burien Bark Supply v. King Cy.*, 106 Wn.2d 868, 871, 725 P.2d 994 (1986); *Grant Cy. v. Bohne*, 89 Wn.2d 953, 955, 577 P.2d 138 (1978).

[5]*Seattle v. Shepherd*, 93 Wn.2d 861, 865, 613 P.2d 1158 (1980); *see also Bellevue v. Miller*, 85 Wn.2d 539, 542, 536 P.2d 603 (1975).

required.[6] A statute is presumed constitutional unless its unconstitutionality appears beyond a reasonable doubt, and the burden of proving impermissible vagueness is on the party challenging the statute's constitutionality.[7]

Looking first to the notice aspect of the void–for–vagueness test, the defendant here had more than fair warning of the criminality of his conduct. He planted 13 separate 16– to 20–foot–tall trees in close proximity to his property line. Those trees, Douglas firs, are potentially huge trees that any reasonable person would expect to grow both up and out. The photographs of the view from the complaining neighbor's balcony in 1978 (Illustration 1) and the 1985 view from the same balcony (Illustration 2) clearly show the trees' growth.[8] The trees now create a barrier which not only restricts or impedes human passage but also blocks light and view. As the trial court properly concluded, the defendant's dense wall of trees falls within the plain, commonly understood terms of the naturally grown fence ordinance and its counterpart definition of a "fence" in CHC 17.08.200.

The defendant argues that this case is similar to *Burien Bark Supply v. King Cy.*, 106 Wn.2d 868, 725 P.2d 994 (1986) wherein we held that the term "processing in a limited degree" in a zoning ordinance was unconstitutionally vague as applied to prohibit a retail and wholesale beauty bark business from using a bark sorter. Citizens affected by the *Burien Bark* ordinance had no basis in common practice and understanding to receive fair notice of what processing was "limited", and thus had no fair warning of what conduct might be considered a violation of the ordinance.[9]

---

[6] *Aver,* at 307; *Bohne,* at 955.

[7] *Aver,* at 306–07; *Shepherd,* at 865.

[8] Illustration 1 is plaintiff's exhibit 6(b); illustration 2 is plaintiff's exhibit 6(h).

[9] *Burien Bark,* at 872.

ILLUSTRATION 1
("Before" Photo)

ILLUSTRATION 2
("After" Photo)

The defendant also relies on *Grant Cy. v. Bohne,* 89 Wn.2d 953, 577 P.2d 138 (1978), in which this court held unconstitutionally vague as applied to mobile homes an ordinance providing: "'No buildings to be moved in on any lot in this district.'"[10] Reasoning that persons of average intelligence would expect a prohibition against mobile homes to specifically refer to "mobile homes" if they were, in fact, prohibited, the court in *Bohne* concluded that "persons would differ as to the application of the prohibition to mobile homes."[11]

The case before us is dissimilar to both *Burien Bark* and *Bohne.* People do have a basis in common practice and understanding for knowing what a fence is. Furthermore, as the Court of Appeals correctly observed, the definition of "fence" provided in the naturally grown fence ordinance is straightforward, with no guesswork whatsoever being required in order to ascertain its meaning.[12] In neither *Burien Bark* nor *Bohne* was any definition given for the terms in dispute. "Processing in a limited degree" and "building" could each have been further explained or defined in the ordinances, but were not. In contrast, "fence" in this case is specifically and clearly defined.

The defendant maintains here, however, that this definition is inadequate because it fails to provide objective guidelines regarding how far apart trees should be, and how far they should be placed away from the property line in order not to constitute a fence. He apparently relies upon this reasoning in *Bohne,* at 956:

Where the language of an ordinance creates a serious question regarding the inclusion of a certain prohibition, but alternative language is plainly available which would

[10]*Bohne,* at 954.

[11]*Bohne,* at 956.

[12]*Clyde Hill v. Roisen,* 48 Wn. App. 769, 771, 740 P.2d 378 (1987), *review granted,* 110 Wn.2d 1007 (1988).

clarify doubt, we believe that failure to utilize such language is *constitutionally infirm*.

Here, plain language *was used* to clarify any possible doubt. For property owners who might be unsure whether natural growth on their property constituted a "fence", the Town provided a definition which explained that if the growth served the purposes of confinement, means of protection or use as a boundary, it would constitute a "fence" as prohibited by CHC 17.36.160. No further objective standards are necessary.

The defendant again relies on the *Burien Bark* case in arguing that the naturally grown fence ordinance fails to provide adequate standards to prevent arbitrary enforcement, thus allowing *ad hoc* interpretations of the law by officials charged with enforcing the ordinance. Again, the defendant fails to observe the crucial differences between this case and the *Burien Bark* case. There, county officials reached contradictory conclusions as to whether the bark sorter constituted "processing in a limited degree".[13] Here, on the other hand, there was no such disagreement giving evidence of arbitrary enforcement. Three town officials, the mayor, the police chief and the building inspector, inspected the defendant's property and found that the trees along the eastern border constituted a fence within the meaning of the ordinance. The fact that the three individuals used different words to express their conclusion that the solid row of trees obstructing the view of the defendant's uphill neighbors amounted to a "naturally grown fence" prohibited by the ordinance does *not* prove that the ordinance is unconstitutionally vague. It proves *only* what everyone already knows, that different witnesses often use different words to describe the same thing.

The defendant finds further evidence of *ad hoc* enforcement in photographs of other locations in Clyde Hill showing dense clumps or lines of trees more·than 8 feet in height. The record, however, reveals that Clyde Hill had

---

[13]*Burien Bark,* at 869–70.

successfully reached a voluntary agreement resolving fence problems in the 30 or so instances that other complaints were made about alleged violations of the naturally grown fence ordinance before this case arose. Clyde Hill relies on its citizens and others to bring to its attention alleged violations. At the time of trial, only in defendant's case had the parties been unable to reach an agreement resolving the matter. Thus, the Town had no choice but to charge defendant with a violation of the naturally grown fence ordinance or to ignore its own laws. This is a far cry from the claim of *ad hoc* enforcement relied on by the defendant. To the contrary, this indicates Clyde Hill's wise decision to use its resources efficiently for the benefit of all citizens, by avoiding court procedures unless absolutely necessary. The defendant would have us penalize cooperation with the Town and award obstinancy. We conclude that the trial court and the Court of Appeals properly upheld the ordinance in question as not void for vagueness.

ISSUE TWO.

CONCLUSION. The naturally grown fence ordinance contains no special intent requirement and we decline to read one into it. A fence of trees is a fence regardless of the landowner's intent in planting it.

 The defendant argues that even if the naturally grown fence ordinance is not unconstitutionally vague, his conviction cannot be upheld because there was no evidence of any "specific intent" to violate the ordinance. The defendant admits only the intent to create a natural, wooded environment. He bases his arguments on the inclusion of the word "purposes" in CHC 17.08.200:

> A "fence" shall be any barrier which is naturally grown or constructed *for purposes* of confinement, means of protection or use as a boundary.

(Italics ours.) Although the defendant's stated purpose in planting the trees was for aesthetics, sufficient intent may be inferred from any conduct that plainly indicates intent

as a matter of logical probability.[14] The defendant's planting of 13 potentially enormous trees near his property line in the fashion he did logically indicates a purpose of confinement or use as a boundary. Furthermore, the ordinance at issue does not use the word "intent". Intent is not a necessary element of a malum prohibitum crime (as opposed to a mala in se crime) such as that described by the naturally grown fence ordinance, unless the ordinance so declares by express terms or apt words.[15] Therefore, no finding of "special intent" was required.

The defendant clearly intended to and did plant tall, bushy trees close together along his property line in a manner that would create a dense, wooded wall. Legally and factually it was a fence and, as such, was prohibited by a valid town ordinance.

The decisions of the trial court and the Court of Appeals are affirmed and the case is remanded to the district court for further proceedings in connection with sentencing.

CALLOW, C.J., UTTER, BRACHTENBACH, DOLLIVER, PEARSON, and DURHAM, JJ., and HAMILTON, J. Pro Tem., concur.

Reconsideration denied March 30, 1989.

---

[14]*State v. Bergeron*, 105 Wn.2d 1, 19–20, 711 P.2d 1000 (1985); *State v. Grayson*, 48 Wn. App. 667, 670, 739 P.2d 1206, *review denied*, 109 Wn.2d 1008 (1987).

[15]*Seattle v. Koh*, 26 Wn. App. 708, 713–14, 614 P.2d 665 (1980); *Seattle v. Gordon*, 54 Wn.2d 516, 519, 342 P.2d 604 (1959).