118 P.3d 909 (2005)
In re DETENTION OF Robin G. ALBRECHT, Appellant.
No. 22651-4-III.
Court of Appeals of Washington, Division 3, Panel Eight.
August 25, 2005.
*911 Susan M. Gasch, Attorney at Law, Spokane, WA, for Appellant.
Todd R. Bowers, Krista K. Bush, Attorney General's Office, Seattle, WA, for Respondent.
KURTZ, J.
¶ 1 In 1996, the State filed a petition for an order to commit Robin Albrecht as a sexually violent predator (SVP). At the time the petition was filed, Mr. Albrecht had been released from incarceration for a sexually violent offense and was in jail for violating community placement conditions. Several years of litigation ensued, and the Supreme Court subsequently held that the State must plead and prove that Mr. Albrecht committed a recent overt act as part of the showing required at the SVP commitment trial. In re Detention of Albrecht, 147 Wash.2d 1, 51 P.3d 73 (2002). Mr. Albrecht now challenges his commitment as a sexually violent predator. He contends (1) the statutory definition of a "recent overt act" is void for vagueness, (2) the evidence is insufficient to establish that he committed a recent overt act, and (3) the order of commitment should be reversed absent consideration of a less restrictive alternative at the initial commitment trial.[1]
¶ 2 We conclude the statutory definition of recent overt act is not void for vagueness because it provides adequate notice of the proscribed conduct and possesses ascertainable standards to prevent arbitrary enforcement. We further conclude the evidence is sufficient to establish that Mr. Albrecht committed a recent overt act. For these reasons, we affirm the order of commitment.

FACTS
¶ 3 Although this case has a long procedural history, our review here is limited to Mr. Albrecht's challenge to his commitment as a SVP. The following evidence was introduced at Mr. Albrecht's commitment trial.
¶ 4 Mr. Albrecht's Misconduct with Children Prior to 1991. Mr. Albrecht was born in 1947. He was arrested for indecent liberties in July 1969, when he was 21 years of age. This incident occurred after Mr. Albrecht lured two nine-year-old girls to his house with the promise of animal crackers. He stuck his tongue into the mouth of one of the girls, laid on top of her on his bed, put his hands in her pants, and rubbed her vagina. Afterwards, Mr. Albrecht gave the girl a one dollar bill. Mr. Albrecht was convicted of misdemeanor indecent liberties and was given a six-month suspended sentence on the condition he seek psychiatric assistance.
¶ 5 In April 1974, Mr. Albrecht walked into the Spokane Police Department and informed them that he had just molested a child. Mr. Albrecht explained that he went out into the hallway of his apartment complex to ask two children to be quiet, and then asked the young girl to come into his apartment. After the girl came into the apartment, Mr. Albrecht put her on his couch and asked her to pull down her panties. He then *912 looked at her and had her pull her panties up. Mr. Albrecht gave her some Twinkies and asked her to leave. Police investigated this incident but elected not to seek prosecution of Mr. Albrecht.
¶ 6 About this same time, Mr. Albrecht became acquainted with the K. family who lived a few blocks away from his apartment. There were six children in the family. Mr. Albrecht's initial contact with the family occurred when he introduced himself to N., who was then approximately 13 years old. After meeting Mr. Albrecht, N. would go to Mr. Albrecht's apartment, which served as a gathering place for children under 16. Mr. Albrecht provided records, candy, alcohol, and money to children who came to his apartment. Eventually, Mr. Albrecht was charged with multiple and serious crimes involving the three youngest K. children. He pleaded guilty to one count of indecent liberties against a child under 14.
¶ 7 As a result of his conviction, Mr. Albrecht entered the sex offender treatment program at Western State Hospital in May 1976. Eight months later, Mr. Albrecht was discharged from the program and sent to prison. According to Mr. Albrecht's therapist, Mr. Albrecht refused to accept responsibility for his behavior, was dishonest with his treatment group, had no remorse for his offenses, and refused to admit that he had a problem. Hospital staff determined that Mr. Albrecht was a sexual psychopath who was not treatable and was a danger to others.
¶ 8 In 1980, Mr. Albrecht was released on parole. There is evidence indicating that during the next few years, Mr. Albrecht continued to have contact with minors and sexual contact with young girls.
¶ 9 1991 Conviction, 1996 Release, and Subsequent Arrest. In 1991, while still on parole, Mr. Albrecht was charged with first degree child molestation. The incident occurred on Christmas Eve and involved a six-year-old girl who lived in the apartment next door to him. Mr. Albrecht fondled the girl's genitals while he was babysitting her. He pleaded guilty to second degree child molestation, resulting in an incarceration that lasted until July 22, 1996. While incarcerated, Mr. Albrecht participated in the sex offender treatment program but was removed from the program within two to three months due to his refusal to accept any responsibility for his behavior. The State did not file a petition alleging he was a sexually violent predator prior to his release.
¶ 10 After Mr. Albrecht's release, he experienced difficulty finding housing because he was a Level III sex offender. On one occasion, he was forced to seek shelter at the Tacoma Rescue Mission. Mr. Albrecht disliked staying at the Mission, so he purposely overdosed on his insulin and was taken to the hospital. The next time that Mr. Albrecht was forced to stay at the Mission, he visited his community corrections officer (CCO) to complain. He informed her that he was the victim, not the children that he molested. The CCO responded by asking Mr. Albrecht to leave her office.
¶ 11 Later that same day, the CCO received a report that Mr. Albrecht had allegedly approached some children. As a consequence, Mr. Albrecht was arrested and jailed for violating his community placement conditions. In her report, the CCO stated that Mr. Albrecht had approached some children and offered money to one of the children. Ultimately, Mr. Albrecht did not contest the community placement violations and he was sanctioned with 120 days of confinement in jail. Shortly before his release from jail, the State filed a SVP action against him. Mr. Albrecht's contact with the minor is alleged to be the recent overt act that supports his commitment as a sexually violent predator.
¶ 12 Evidence Related to Recent Overt Act. B.N.N. and his family immigrated to Tacoma in 1994 from Vietnam. At the time of Mr. Albrecht's release from prison, in 1996, B.N.N. was 13 years old and smaller than other children his age.
¶ 13 Due to its location, the apartment complex where B.N.N.'s family lived routinely received notifications of sex offenders living nearby. When a notification was received, the manager's practice was to post the sex offender notification bulletins for Level III sex offenders on a bulletin board above the mailboxes. Also, the manager would give a copy of the Level III sex offender *913 bulletins to each family in the complex. The manager followed this procedure with the bulletin regarding Mr. Albrecht. On August 20, 1996, Mr. Albrecht's bulletin was the only one above the mailboxes.
¶ 14 On that day, Mr. Albrecht had been asked to leave his CCO's office. Thereafter, he went to the emergency room at St. Joseph's Hospital in Tacoma, staying there until 1:35 P.M. At 2:00 P.M., several Vietnamese children who lived in B.N.N.'s apartment complex ran into the manager's office and told her that the man from the bulletin had tried to grab B.N.N. The manager followed the boys outside, where B.N.N. told her that the man from the bulletin had offered him 50 cents and grabbed his hand, but that B.N.N. had pulled away.
¶ 15 At the commitment trial, B.N.N., now 21, testified through an interpreter. Due to the passage of time, he could not remember everything that occurred on August 20. He did recall, however, that a man wearing a green jacket offered him 50 cents to follow him. Pursuant to ER 801(d)(iii), the trial court admitted the statement he gave to Mr. Albrecht's CCO, which B.N.N. signed just 10 days after the incident. In that statement, B.N.N. identified the man who offered him the 50 cents as the man whose picture was posted above the mailboxes at the apartment complex. B.N.N. stated that the man tried to grab him but was unable to because B.N.N. ran away.
¶ 16 Expert Testimony as to Mr. Albrecht's Mental Condition. At trial, the State presented the testimony of Roger Wolfe, a psychological affiliate, certified sex offender treatment provider, and an expert in the evaluation and treatment of sex offenders. In evaluating Mr. Albrecht, Mr. Wolfe reviewed approximately 2,200 pages of documents and interviewed Mr. Albrecht.
¶ 17 Based on this information, Mr. Wolfe diagnosed Mr. Albrecht as suffering from pedophilia, a mental abnormality, and personality disorder not otherwise specified with antisocial, paranoid and borderline features. According to Mr. Wolfe, this mental abnormality and personality disorder negatively impacts Mr. Albrecht's ability to control his behavior, making him more likely than not to commit predatory acts of sexual violence unless he is confined in a secure facility.
¶ 18 Mr. Wolfe testified about Mr. Albrecht's history of grooming children for sexual contact by offering them inducements such as money. Mr. Wolfe acknowledged that the allegations regarding the recent overt act did not match Mr. Albrecht's normal pattern, which was more careful and secretive. But Mr. Wolfe further suggested Mr. Albrecht's situation, including the lack of housing, explained the variance.
¶ 19 Thomas Moore, the therapist who treated Mr. Albrecht at Western State Hospital in 1976, also testified. He emphasized the consistent grooming process employed by Mr. Albrecht. Mr. Moore suggested that this pattern might have escalated, given the amount of pressure Mr. Albrecht was experiencing as a Level III sex offender.
¶ 20 Mr. Albrecht was committed as a SVP. He appeals.

ANALYSIS

Is the statutory definition of "recent overt act" void for vagueness?
¶ 21 Standard of Review. A statute is presumed to be constitutional unless shown to be unconstitutional beyond a reasonable doubt. State v. Aver, 109 Wash.2d 303, 306-07, 745 P.2d 479 (1987).
¶ 22 Requirements of the SVP Statute. Under chapter 71.09 RCW, the State may seek a civil commitment order to have a person involuntarily committed as a SVP. Because civil commitment as a SVP impinges on an individual's liberty interest, the strict scrutiny test applies. Therefore, the statutory scheme is constitutional only if it furthers a compelling state interest and is narrowly tailored to serve those purposes. In re Pers. Restraint of Young, 122 Wash.2d 1, 26, 857 P.2d 989 (1993). To comport with due process, civil commitment requires proof of a mental disorder and current dangerousness. See Foucha v. Louisiana, 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) (quoting Jones v. United States, 463 U.S. 354, 362, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983)).
*914 ¶ 23 Under the SVP statute, the court or jury must find that the person is a sexually violent predator beyond a reasonable doubt. RCW 71.09.060(1). The State must establish that the person suffers from a mental disorder "which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(16). This requires a showing that the person "more probably than not will engage in such acts if released unconditionally from detention on the sexually violent predator petition." RCW 71.09.020(7).
¶ 24 If the State files the petition when the person is not totally confined, the likelihood that a person will engage in predatory acts "must be evidenced by a recent overt act." RCW 71.09.020(7). The term "recent overt act" is defined as:
[A]ny act or threat that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm in the mind of an objective person who knows of the history and mental condition of the person engaging in the act.
RCW 71.09.020(10).
¶ 25 Adoption of the Recent Overt Act Requirement. Mr. Albrecht challenges the definition of "recent overt act" on due process grounds. He argues that the definition is not narrowly tailored to serve compelling state interests. But an examination of the history of the SVP statute reveals that the recent overt act requirement was added to the statutory scheme precisely because of due process concerns.
¶ 26 As originally drafted, chapter 71.09 RCW did not expressly include the requirement of a recent overt act. The requirement of a recent overt act as evidence of dangerousness was first considered in the context of the involuntary commitment statute. In re Harris, 98 Wash.2d 276, 284-85, 654 P.2d 109 (1982). Harris held that "a showing of a substantial risk of physical harm as evidenced by a recent overt act" is necessary to satisfy substantive due process. Id. at 284, 654 P.2d 109. In other words, the State may deprive a person of his or her liberty only if the State can demonstrate present dangerousness by hard evidence, i.e., a recent overt act. Id.
¶ 27 Because the original SVP statute appeared to lack a recent overt act requirement, the statute was challenged on due process grounds. In Young, the court held the statute was constitutional because the statute implicitly required that the State demonstrate a substantial risk of physical harm as evidenced by a recent overt act if a person had been released from total confinement. Young, 122 Wash.2d at 41-42, 857 P.2d 989. Later, the statute was amended to include the recent overt act requirement as the result of the holding in Young.
¶ 28 Arguably, the question raised by Mr. Albrecht has already been answered by Young's reading of the statute to include the requirement of a recent overt act, before the legislature adopted the amendment.
¶ 29 Mr. Albrecht's argument focuses on the words "reasonable apprehension," which he believes are vague and violate due process. But Harris, later followed by Young, determined that the requirement of a recent overt act required a showing of an act which "has caused harm or creates a reasonable apprehension of dangerousness." Harris, 98 Wash.2d at 285, 654 P.2d 109 (emphasis added). Similarly, in In re Detention of Albrecht, 147 Wash.2d 1, 8, 51 P.3d 73 (2002), the Supreme Court examined the definition of "recent overt act" as defined in former RCW 71.09.020(5) (1995), which stated that a recent overt act was "`any act that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm.'" (Emphasis added.) The definition of "recent overt act" is now stated with greater specificity and requires "a reasonable apprehension of such harm in the mind of an objective person who knows of the history and mental condition of the person engaging in the act." RCW 71.09.020(10).
¶ 30 Vagueness Doctrine. Ignoring the inherent implications of Young, Harris, and Albrecht, Mr. Albrecht maintains the statutory term "recent overt act" is void for vagueness.
¶ 31 The due process vagueness doctrine seeks to ensure that the public has adequate notice of what conduct is proscribed *915 and to ensure that the public is protected from arbitrary ad hoc enforcement. State v. Riles, 135 Wash.2d 326, 348, 957 P.2d 655 (1998). As a result, the vagueness doctrine is violated if the provision (1) fails to define the criminal offense so that ordinary people can understand what conduct is proscribed, and (2) fails to provide ascertainable standards of guilt to prevent arbitrary enforcement. City of Spokane v. Douglass, 115 Wash.2d 171, 178, 795 P.2d 693 (1990).
¶ 32 However, some degree of vagueness is inherent because language must be used to proscribe the conduct. Riles, 135 Wash.2d at 348, 957 P.2d 655. "Thus, a vagueness challenge cannot succeed merely because a person cannot predict with certainty the exact point at which conduct would be prohibited." Id. The party challenging the prohibition carries the burden of overcoming the presumption that the limitation is constitutional. Id.
¶ 33 Challenges under the due process vagueness doctrine, which do not involve First Amendment rights, are evaluated under the facts of each case. State v. Lee, 135 Wash.2d 369, 393, 957 P.2d 741 (1998). "A defendant whose conduct clearly fits within the proscriptions of a statute does not have standing to challenge the constitutionality of that statute for vagueness." Id. (citing State v. Hegge, 89 Wash.2d 584, 589, 574 P.2d 386 (1978)).
¶ 34 FAIR NOTICE PRONG. Mr. Albrecht maintains that the enforcement of the SVP statute is problematic because the phrase "reasonable apprehension" is not adequately defined in the statute and the statute does not contain standards that provide adequate notice of the proscribed conduct.
¶ 35 A statute fails to fulfill the first prong of the vagueness analysis only if it is written in terms so vague that persons of common intelligence must guess at the meaning and would differ as to its application. Douglass, 115 Wash.2d at 179, 795 P.2d 693 (quoting Burien Bark Supply v. King County, 106 Wash.2d 868, 871, 725 P.2d 994 (1986)). When evaluating vagueness, the statutory language must be examined in light of the entire statutory scheme employing a "sensible, meaningful, and practical interpretation." Douglass, 115 Wash.2d at 180, 795 P.2d 693.
¶ 36 When considering the standard of dangerousness for the involuntary commitment of an individual, the Harris court determined that the applicable provision, RCW 71.05.020, must be interpreted "as requiring a showing of a substantial risk of physical harm as evidenced by a recent overt act." Harris, 98 Wash.2d at 284, 654 P.2d 109. Significantly, Harris also concluded that a recent overt act "may be one which has caused harm or creates a reasonable apprehension of dangerousness." Id. at 284-85, 654 P.2d 109. And that, "[s]o construed, we believe the standard of dangerousness contained in RCW 71.05.150 provides a constitutional basis for detention." Id. at 285, 654 P.2d 109. A similar standard was approved in Albrecht. Albrecht, 147 Wash.2d at 11, 51 P.3d 73.
¶ 37 Mr. Albrecht urges this court to conduct an inquiry into the due process implications of a standard requiring a conclusion as to "reasonable apprehension of harm." But the Washington courts have already determined that this portion of the statute meets constitutional muster. Moreover, Mr. Albrecht's conduct fit within the meaning of the proscriptions of the statutory language. When the definition here is applied to the facts of Mr. Albrecht's case, the definition is sufficiently specific to provide adequate notice to persons of common intelligence that Mr. Albrecht's contact with B.N.N. constituted a recent overt act.
¶ 38 Mr. Albrecht fails to prove lack of fair notice beyond a reasonable doubt.
¶ 39 ASCERTAINABLE STANDARDS PRONG. Mr. Albrecht also contends that the statutory definition of recent overt act does not provide ascertainable standards to guide a jury and permits arbitrary and discriminatory enforcement. Mr. Albrecht contends that a "reasonable apprehension of harm" permits a finding of a recent overt act even when the act does not rise to the level of current dangerousness required to justify commitment as a SVP.
*916 ¶ 40 When applying this prong, the court must decide whether the SVP statute proscribes conduct based on inherently subjective terms that permit an inordinate amount of discretion by the jury. See Douglass, 115 Wash.2d at 181, 795 P.2d 693.
¶ 41 To some extent, Mr. Albrecht confuses the term "recent overt act" with other provisions in the statute establishing the proof required to commit a person as a SVP. The SVP statute must be read as a whole and a showing of a recent overt act is not the only showing required under Washington's SVP statute.
¶ 42 The term "recent overt act" is defined with great specificity. The recent overt act requirement provides adequate standards and does not proscribe conduct in inherently subjective terms.

Was the evidence sufficient to establish that Mr. Albrecht committed a recent overt act?
¶ 43 Standard of Review. When the sufficiency of the evidence is challenged, this court views the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
¶ 44 Sufficiency of the Evidence. To prove a recent overt act, the evidence must establish that Mr. Albrecht's conduct with regard to B.N.N. created a reasonable apprehension of harm of a sexually violent nature in the mind of an objective person who knows of Mr. Albrecht's history and mental condition.
¶ 45 Mr. Albrecht's primary argument is one of statutory construction. Mr. Albrecht asserts that the term "reasonable apprehension" must be interpreted to mean that the act or threat itself must be dangerous. He maintains that the act of offering a boy 50 cents is not a dangerous act, much less a sexually violent act.
¶ 46 But this reading of the statute is not justified based on a plain reading of the statutory language. Moreover, Mr. Albrecht appears to misunderstand that the showing of a recent overt act is only one part of the showing required for commitment under the SVP statutory scheme. The Washington scheme requires proof of a mental condition and current dangerousness. The showing that a person is "[l]ikely to engage in predatory acts of sexual violence if not confined in a secure facility" must be "evidenced by a recent overt act" if the person is not incarcerated when the SVP petition is filed. RCW 71.09.020(7). The recent overt act requirement must be read as written and in light of the statute as a whole.
¶ 47 Examining the evidence here, we conclude that sufficient evidence exists to support the finding of a recent overt act. Mr. Albrecht approached B.N.N. and offered the boy a small amount of money to follow him. When the boy hesitated, Mr. Albrecht attempted to grab the boy's arm. Mr. Albrecht is a diagnosed pedophile with a 20-year history of sexually molesting prepubescent children using a grooming technique where he offered his victims candy and money to promote their contact with him. The grooming of these victims permitted Mr. Albrecht to commit a "sexually violent offense" as defined in RCW 71.09.020(15). Mr. Albrecht's contact with B.N.N. was consistent with this pattern of obtaining the contact with his victims except for the fact that the contact occurred in an alley, not an apartment. However, this deviation was explained by Mr. Albrecht's housing difficulties on the day of the incident.
¶ 48 Sufficient evidence supports the finding that Mr. Albrecht's luring of B.N.N. constituted a recent overt act.
¶ 49 We affirm Mr. Albrecht's order of commitment.
WE CONCUR: SWEENEY, A.C.J., and BROWN, J.
NOTES
[1] Mr. Albrecht concedes that In re Detention of Thorell, 149 Wash.2d 724, 72 P.3d 708 (2003), cert. denied, 541 U.S. 990, 124 S.Ct. 2015, 158 L.Ed.2d 496 (2004), relieves the State of the obligation to prove a less restrictive alternative at the initial SVP commitment trial. Mr. Albrecht presented the issue to preserve the issue in the event that Thorell was overturned by the United States Supreme Court. The United States Supreme Court has declined to accept review.