FILED
COURT OF APPEALS
DIVISION II

2014 AUG -5 AM 10: 40

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44451-8-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| NICHOLAS B. WINTERBERGER, | |
| Appellant. | |

BJORGEN, A.C.J. — Nicholas Winterberger appeals from sentencing conditions imposed following his guilty plea to third degree rape. Agreeing that some of the sentencing conditions were imposed in error, we remand to the trial court to strike them.[1]

## FACTS

The State charged Winterberger, then age 18, with second degree rape of a girl he met while both were taking classes at Remann Hall. He entered a *Newton*[2] plea to third degree rape. A presentence investigation report informed the trial court that he had a prior juvenile adjudication for third degree assault with sexual motivation and that he had completed a substance abuse treatment program. The presentence investigation report recommended a sentence of 15 months of

---

[1] A commissioner of this court initially considered Winterberger's appeal as a motion on the merits under RAP 18.14 and then transferred it to a panel of judges.

[2] *State v. Newton*, 87 Wn.2d 363, 372-73, 552 P.2d 682 (1976); *see also N. Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

No. 44451-8-II

confinement, to be followed by 36 months of community custody under conditions contained in

Exhibit H attached to the presentence report. Among those conditions were the following:

11. Enter and complete, following release, a state approved sexual deviancy treatment program (if Court-Ordered) through a certified sexual deviancy counselor. You are to sign all necessary releases to ensure your Community Corrections Officer will be able to monitor your progress in treatment.

12. You shall not change sexual deviancy treatment providers without prior approval from the Court and your Community Corrections Officer.

13. You shall not possess or consume any controlled substances without a valid prescription from a licensed physician.

14. Have no contact with the victim (CTS), or any minor children. This includes but is not limited to personal, verbal, written or contact through a third party. Contact with minor children, if any, will need to be supervised, and will require prior approval by the Sexual Deviancy Treatment Provider and the CCO.

15. Hold no position of authority or trust involving children under the age of 18.

16. Do not initiate, or have in any way, physical contact with children under the age of 18 for any reason, unless approved as per # 14 above. Do not have any contact with physically or mentally vulnerable individuals.

17. Inform your Community Corrections Officer of any romantic relationships to verify there is [sic] no victim-age children involved.

18. Submit to polygraph and/or plethysmograph testing upon direction of your Community Corrections Officer and/or therapist at your expense.

19. Register as a sex offender in your county of residence per current Statute requirements pertaining to your crime of conviction.

20. Do not go to or frequent places where children congregate, (Fast-food outlets, libraries, theaters, shopping malls, play grounds and parks.) unless otherwise approved by the Court.

21. Submit to testing for DNA purposes, and for an HIV test also if Court-ordered.

22. Follow all conditions imposed by your treatment provider(s) and CCO.

23. Obey all laws, and abide by any curfew that may be imposed by your CCO.

24. You shall not have access to the Internet at any location nor shall you have access to computers (with the exception of for employment purposes) unless otherwise approved by the CCO. You also are prohibited from joining or perusing any public social websites (Face book, MySpace, etc.) or telephoning any sexually-oriented "900" telephone numbers.

25. Do not possess or peruse any sexually explicit materials in any medium. Your sexual deviancy treatment provider will define sexually explicit material. Do not patronize prostitutes or establishments that promote the commercialization of sex. Also, do not possess or use any cell phone that may provide access to the Internet as well.

2

26. Obtain a Substance Abuse Evaluation, and then follow any recommended treatment as directed until successful completion of any compulsory treatment program.

Clerk's Papers (CP) at 71-72 (emphasis omitted).

Winterberger objected to condition 26 because there was no evidence that controlled substances or alcohol was involved in the crime. He objected to the conditions regarding minors, other than the victim, because the victim was only one year younger than him, so he did not take advantage of any age differential. In addition, he objected to conditions 23, 24 and 25 to the extent that they created a curfew, forbade him from possessing or perusing sexually explicit materials, and restricted his access to the Internet and to computers. The trial court imposed all of the conditions contained in Exhibit H of the presentence investigation report, and Winterberger appeals.

## ANALYSIS

Winterberger renews his arguments objecting to the imposition of conditions 24, 25 and 26. He also, for the first time on appeal, objects to condition 18 to the extent it obliges him to undergo penile plethysmograph testing upon direction of a community corrections officer (CCO).[3] We review de novo the trial court's statutory authority to impose conditions of community custody and any questions of statutory interpretation relating to that authority. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). However, if the trial court has authority to impose the condition, we review its decision to do so for an abuse of discretion. *Armendariz*, 160 Wn.2d at 110.

---

[3] Illegal or erroneous sentences may be challenged for the first time on appeal. *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008).

3

First, Winterberger argues that the trial court erred in imposing condition 26, requiring a substance abuse evaluation and any recommended treatment, because it did not make a finding under RCW 9.94A.607(1) that he has a chemical dependency that contributed to the crime. *State v. Jones*, 118 Wn. App. 199, 207-08, 76 P.3d 258 (2003). The State responds that Winterberger admitted to using marijuana at least three to four times per week during the year prior to the crime, so the condition was properly imposed. But without the trial court making a finding that Winterberger's marijuana use contributed to the crime, we agree that it abused its discretion in imposing condition 26 and remand for the trial court to strike that condition in its entirety.[4]

Second, he argues that the trial court erred in imposing condition 25 to the extent it ordered that he could not "possess or peruse any sexually explicit materials in any medium." Br. of Appellant at 8. He contends that the condition is unconstitutionally vague. In *Bahl*, the Supreme Court considered a challenge to a similar, but not identical condition of community custody that stated:

> "Do not possess or access pornographic materials, as directed by the supervising Community Corrections Officer. Do not frequent establishments whose primary business pertains to sexually explicit or erotic material."

*Bahl*, 164 Wn.2d at 743 (quoting 1 Clerk's Papers at 28). The court held first that the ban on possessing pornographic materials was vague and that the discretion of the CCO only made the

---

[4] The State correctly points out that *State v. Autrey* held that "'[a]lthough the conduct prohibited during community custody must be directly related to the crime, it need not be causally related to the crime.'" 136 Wn. App. 460, 467, 150 P.3d 580 (2006) (quoting *State v. Letourneau*, 100 Wn. App. 424, 432, 997 P.2d 436 (2000)). Recognizing that the line between causing a condition and contributing to it may be indistinct, *Autry* nonetheless cannot be read as effacing the requirement of RCW 9.94A.607(1) that the court find a chemical dependency that contributed to the crime before requiring a substance abuse evaluation and treatment. That finding or its equivalent was not made here.

vagueness more apparent because it was apparent there were no ascertainable standards for enforcement. *Bahl*, 164 Wn.2d at 758. The court also held, though, that the references to "sexually explicit" and "erotic" were not vague, since in their context the terms, their dictionary definitions, and the statutory definition in RCW 9.68.130(2) restricted Bahl "from patronizing adult bookstores, adult dance clubs, and the like." *Bahl*, 164 Wn.2d at 759.

If the term "sexually explicit material" is not vague in a ban on visiting establishments whose primary business pertains to that material, it would not be vague in a ban on possessing or accessing such material. Condition 25 does vest discretion in a third party to "define" that material, but we see a gulf between this situation and the CCO's discretion found suspect in *Bahl*. Here, the discretion rests in Winterberger's sexual deviancy treatment provider and is exercised in the course of providing that treatment. This is not the sort of personal or arbitrary discretion which the vagueness doctrine is designed to limit. *See Burien Bark Supply v. King County*, 106 Wn. 2d 868, 871, 725 P.2d 994 (1986) (ordinance void for vagueness because criteria for enforcement is left entirely to the discretion of county officials). Rather, condition 25 recognizes the discretion and flexibility a therapist or other treatment provider must have to respond to the unique circumstances posed by each client or patient. This recognition does not insulate a grant of discretion from a vagueness challenge if it in fact is exercised in an arbitrary or irrational manner. It does mean that a reasonable grant of therapeutic discretion such as this is not void for vagueness on its face. The trial court was authorized to impose this condition and

No. 44451-8-II

did not abuse its discretion in doing so.

Third, Winterberger argues that the trial court erred in imposing condition 25 to the extent that it ordered him to not "patronize prostitutes or establishments that promote the commercialization of sex." CP at 71-72. The State suggests that this condition is also a condition of his sexual deviancy treatment, but concedes that if the condition were imposed independently, it should be stricken. We conclude that the condition is independent of Winterberger's sexual deviancy treatment and accept the State's concession. Accordingly, we remand with instructions to strike the portion of condition 25 that states, "Do not patronize prostitutes or establishments that promote the commercialization of sex." CP at 71-72. Winterberger remains subject to unchallenged condition 22, requiring him to follow all conditions imposed by his treatment provider and CCO and unchallenged condition 23, requiring him to obey all laws and abide by any curfew imposed by the CCO.

Fourth, he argues that the trial court erred in imposing conditions 24 and 25 to the extent they restricted his access to the Internet, to computers, to public social web sites and to cell phones with Internet access. He contends that none of them are related to his crime and so they cannot be imposed as "crime-related prohibitions" under RCW 9.94A.703(3)(f). Br. of Appellant at 11. The State concedes that the trial court erred in this regard, and we accept that concession. *See State v. Zimmer*, 146 Wn. App. 405, 414, 190 P.3d 121 (2008) (striking a condition prohibiting cell phone use when no evidence in the record supported a finding that defendant used the device in connection with the crime); *State v. O'Cain*, 144 Wn. App. 772, 775, 184 P.3d 1262 (2008) (striking condition prohibiting Internet access because no evidence that Internet use contributed to or facilitated the rape). We remand with instructions to strike

6

condition 24 and the portion of condition 25 that states, "Also, do not possess or use any cell phone that may provide access to the Internet as well." CP at 71-72.

Finally, Winterberger argues that the trial court erred in imposing condition 18 to the extent that it requires him to undergo penile plethysmograph testing upon direction of a CCO. He contends that because such testing serves only a diagnostic or treatment purpose, and does not serve a monitoring purpose, there is no rational basis for allowing a CCO to order him to undergo that testing. In *State v. Riles*, 135 Wn.2d 326, 337, 345, 957 P.2d 655 (1998), *overruled on other grounds by State v. Valencia*, 169 Wn.2d 782, 239 P.3d 1059 (2010), the court upheld a condition of community placement[5] requiring plethysmograph testing "upon the request of your therapist and/or [CCO]" as long as the trial court also required "crime-related treatment which reasonably would rely upon plethysmograph testing as a physiological assessment measure." Condition 11 of Winterberger's community custody required him to enter and complete a state approved sexual deviancy treatment program through a certified sexual deviancy counselor. Plethysmograph testing is an essential element in the assessment and treatment of the sexual aggressor. *Riles*, 135 Wn.2d 344 n.58, 345-46. Therefore, requiring this testing along with Winterberger's sexual deviancy treatment is authorized under *Riles*.

To summarize, we remand to the trial court to strike (1) all of condition 24; (2) that portion of condition 25 that states, "Do not patronize prostitutes or establishments that promote the commercialization of sex. Also, do not possess or use any cell phone that may provide

---

[5] Former RCW 9.94A.120(9)(b) (1998), the statute under which this condition was imposed on Riles, was recodified in 2001 as RCW 9.94A.505, a provision dealing with community custody. LAWS OF 2001, ch. 10, § 6.

7

No. 44451-8-II

access to the Internet as well"; and (3) all of condition 26.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, A.C.J.

We concur:

LEE, J.

MELNICK, J.