# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| PAUL M. DWIGHT and DONNA J. DETAMORE, husband and wife; and JOHN W. ZIMMERMAN and TRACY C. ZIMMERMAN, husband and wife, | ) ) ) ) ) | No. 73832-1-I |
|  | ) | DIVISION ONE |
| Respondents/ Cross Appellants, | ) ) ) |  |
| v. | ) ) |  |
| TANYA J. KEPPLER-KNAUS, a single woman; and RICHARD C. KEPPLER and SUSAN G. KEPPLER, husband and wife, | ) ) ) ) ) | UNPUBLISHED FILED: August 29, 2016 |
| Appellants/ Cross Respondents. | ) ) ) ) |  |

Cox, J. — Courts give restrictive covenants their intended purpose and emphasize protecting the homeowners' collective interest.[1] The restrictive covenant at issue in this case restrict "hedges" and "fences" to a height of six feet. Because the trees on the property at issue here violate this restrictive covenant, we affirm the grant of summary judgment. We also hold that the trial court did not abuse its discretion in determining the scope of the appropriate remedy.

---

[1] Wilkinson v. Chiwawa Communities Ass'n, 180 Wn.2d 241, 250, 327 P.3d 614 (2014).

The parties in this case own property in a neighborhood on Whidbey Island. The neighborhood is built on a slope, which provides views of the Puget Sound and Olympic mountains. Tanya Keppler-Knaus, Richard Keppler, and Susan Keppler (collectively "the Kepplers") own a house that is downhill from the houses owned by John Zimmerman, Tracy Zimmerman, Paul Dwight, and Donna Detamore (collectively "the Zimmermans"). Trees on the Kepplers' property block the views of their uphill neighbors.

The Zimmermans brought this action to enforce a restrictive covenant governing the properties. They alleged that the Kepplers' property contains a group of trees that constitute a "hedge" or "fence" in violation of the restrictive covenant.

The Kepplers answered by denying that their trees violated the terms of the restrictive covenant. They also alleged that the restrictive covenant had been abandoned.

Both parties moved for summary judgment and stipulated that no genuine issues of material fact existed. The trial court granted summary judgment in favor of the Zimmermans, concluding that the trees were a hedge and that the covenant had not been abandoned. The trial court ordered the Kepplers to cut certain trees on their property to a height of 6 feet or less.

The Kepplers appeal. The Zimmermans cross appeal the scope of the trial court's remedy.

## RESTRICTIVE COVENANTS

The Kepplers argue that the trial court erred by denying their motion for summary judgment and granting summary judgment in favor of the Zimmermans. We disagree.

Courts may grant summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[2] When ruling on summary judgment, the trial court considers the evidence in the light most favorable to the nonmoving party.[3] We review de novo summary judgment, applying the same standards as the trial court.[4]

Interpretation of a restrictive covenant is a question of law.[5] Courts interpret restrictive covenants under the rules of contract interpretation.[6] Washington courts once strictly construed covenants to favor the free use of land.[7] But we no longer apply this rule when the dispute is between homeowners jointly governed by the covenants.[8]

---

[2] Wash. Fed. v. Harvey, 182 Wn.2d 335, 340, 340 P.3d 846 (2015) (quoting Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000)).

[3] Young v. Key Pharm., Inc., 112 Wn.2d 216, 226, 770 P.2d 182 (1989).

[4] Wash. Fed., 182 Wn.2d at 339.

[5] Wilkinson, 180 Wn.2d at 249.

[6] Id.

[7] Id. at 249-50.

[8] Id.

Instead, we "'ascertain and give effect to those purposes intended by the covenants.'"[9] We emphasize interpreting the covenant to "'protect[] the homeowners' collective interests.'"[10]

Our primary goal is to determine the drafter's intent.[11] To do so, "we give covenant language 'its ordinary and common use' and will not construe a term in such a way 'so as to defeat its plain and obvious meaning.'"[12]

The covenant at issue here states, "No fences or hedges shall be erected or permitted to grow to a height exceeding 6 feet."[13] The covenant does not define the term "hedge." Thus, we turn to its common meaning.

The term "hedge" has several definitions. One definition is "a fence or boundary formed by a row of shrubs or low trees planted close together."[14] A broader definition is "any fence or wall marking a boundary or forming a barrier."[15]

---

[9] Id. at 250 (quoting Riss v. Angel, 131 Wn.2d 612, 623, 934 P.2d 669 (1997)).

[10] Id. (internal quotation marks omitted) (quoting Riss, 131 Wn.2d at 623-24).

[11] Id.

[12] Id. (first quoting Mains Farm Homeowners Ass'n v. Worthington, 121 Wn.2d 810, 816, 854 P.2d 1072, 1074 (1993); then quoting Riss, 131 Wn.2d at 623).

[13] Clerk's Papers at 502.

[14] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 1048 (2002).

[15] Id.

A "boundary" is "[s]omething that indicates a border or limit."[16]

We conclude that the Kepplers' trees constitute a "hedge."

We note that this court has held in a prior case that trees may constitute a fence.[17] And the Kepplers' trees mark a boundary and form a barrier.

As the trial court in this case noted, the undisputed evidence shows that the trees are planted along the Kepplers' property lines. Although the trees are not planted exactly on the property line, "it is apparent that they form boundaries forming a U-shaped barrier around the back of the [Kepplers'] property. . . . The trees in question are not scattered all over the [Kepplers'] property in a haphazard fashion, but rather exist on or close to" their property lines.[18] Thus, by marking the Kepplers' property lines, the trees are a boundary.

The trees also constitute a visual barrier. The trees' branches intertwine, forming a barrier that blocks the Zimmermans' views.

We conclude that the trial court properly determined that the Kepplers' trees constitute a "hedge" under the terms of the restrictive covenant.

The surrounding circumstances may also assist in interpreting covenants. A restrictive covenant may protect views even if the covenant lacks explicit language to that effect.[19] In Bauman v. Turpen, a restrictive covenant limited

---

[16] AMERICAN HERITAGE DICTIONARY (5th ed. 2016) https://ahdictionary.com/word/search.html?q=boundary.

[17] Lakes at Mercer Island Homeowners Ass'n v. Witrak, 61 Wn. App. 177, 182, 810 P.2d 27 (1991).

[18] Report of Proceedings (June 19, 2015) at 15-16.

[19] Bauman v. Turpen, 139 Wn. App. 78, 87-90, 160 P.3d 1050 (2007).

houses to one story.[20] The Turpens began building a three-level home that was "considerably larger than the surrounding homes."[21] Under the building code, which did not limit the height of a story, this qualified as a one story house.[22]

After a bench trial, the court determined that the drafter's intent was to preserve the views of uphill homes.[23] It also determined that using the building code's definition of "story" would not effectuate this intent because it would allow houses tall enough to "entirely" eliminate the view of uphill houses.[24]

The Turpens appealed, arguing that the trial court improperly used extrinsic evidence to determine the meaning of "story."[25] This court affirmed the trial court, holding that the trial court properly used "the 'surrounding circumstances of the original parties' . . . 'to determine the meaning of the specific words and terms used in the covenants.'"[26] The court went on to note that:

> extrinsic evidence was necessary to define the operative term because it "was not defined either with reference to any building code or inches and feet measurement." Thus, the trial court properly considered evidence of neighborhood topography and

---

[20] Id. at 83.

[21] Id. at 91.

[22] Id. at 86-87.

[23] Id. at 87-88.

[24] Id.

[25] Id. at 88.

[26] Id. at 89 (quoting Hollis v. Garwall, Inc., 137 Wn.2d 683, 696, 974 P.2d 836 (1999)).

what limits the grantor placed on his own house to decide what "one story" meant to him when he wrote it.[27]

Similarly, in Wimberly v. Caravello, the trial court properly considered a neighborhood's topography when interpreting a restrictive covenant.[28] The court determined that "[t]he scenic location and views are an intrinsic part of the aesthetic and monetary value of the lots."[29]

Here, the undisputed evidence shows that the drafter of this covenant intended to protect the homeowners' views. The covenant also restricts homes to "one story in height above the highest existing ground level at the proposed building site."[30] Additionally, the covenant exempts certain lots "at the farthest upslope part of the subdivision" from this height limitation.[31] These restrictions, combined with the neighborhood's topography, demonstrate that the covenant is intended to protect views.

Additionally, protecting views is in the homeowners' collective interest. Real estate listings for all of the parties' properties describe the properties' views. For example, a listing for the Kepplers' home described it as having "[o]ne of the most dramatic views on Whidbey Island . . . . expansive, elevated views of the

---

[27] Id. at 89-90.

[28] 136 Wn. App. 327, 337, 149 P.3d 402 (2006).

[29] Id.

[30] Clerk's Papers at 502.

[31] Id.; Report of Proceedings (June 19, 2015) at 22.

shipping lanes and Olympic Mountains."[32] Similarly, a listing for the Zimmermans' property notes its "spectacular views of the west side of Whidbey Island [and] views of the shipping lanes and the majestic Olympic Mountains."[33] Accordingly, the trial court properly concluded that the views were the "primary selling point" for the homes in the subdivision.[34]

The Kepplers argue that their trees are not a hedge because they are large and well-spaced trees. They rely on definitions of "hedge" as a group of closely planted low growing trees. This argument is unpersuasive because these are not the only dictionary definitions that bear on the question.

"[A] row of shrubs or low trees planted close together" is a definition of hedge.[35] But as stated earlier, "hedge" also has a broader definition, which includes the Kepplers' trees. Just as the court in <u>Bauman</u> did, we use the definition that reflects the drafter's intent and protects the homeowners' collective interests. Using the Kepplers' definition would defeat the covenant's purpose by allowing rows of large trees to block views, so long as the trees were not planted close to each other.

The Kepplers also argue that the drafter did not intend to protect views. First, the Kepplers argue that the restriction on hedges is intended to promote aesthetic uniformity, not to protect views. They rely on the fact that the covenant

---

[32] Clerk's Papers at 364.

[33] Id. at 369.

[34] Report of Proceedings (June 19, 2015) at 17.

[35] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 1048 (2002).

8

does not exempt certain lots from the hedge height restriction, as it does for the height of homes. But a provision of a restrictive covenant may have more than one purpose. The fact that the hedge restriction promotes uniformity does not mean that it does not also protect views.

Second, the Kepplers rely on the restrictive covenant of another subdivision in the same development to argue that the drafter did not intend to protect views in the Kepplers' subdivision. But the restrictive covenant of another subdivision is irrelevant. We interpret the restrictive covenant that applies to the properties in question.

Third, the Kepplers rely on an unsuccessful attempt to amend their restrictive covenant to explicitly protect views. In 1983, the members of the subdivision attempted to amend the restrictive covenant from 1963. But the homeowners' subsequent interpretation of their restrictive covenant is not relevant to determining the drafter's intent. Thus, the Kepplers' arguments are unpersuasive.

## ABANDONMENT OF COVENANT

The Kepplers also argue that the restrictive covenant has been abandoned. We disagree.

Abandonment is an equitable defense to enforcement of a restrictive covenant.[36] This defense applies if violations by other residents have eroded the

---

[36] Mountain Park Homeowners Ass'n, Inc. v. Tydings, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).

general plan to make enforcing the covenant inequitable.[37] "Violations must be material to the overall purpose of the covenant, and minor violations are insufficient to find abandonment."[38] Evidence of a single violation is insufficient.[39]

The trial court did not err when it concluded that the covenant had not been abandoned. The undisputed evidence shows many instances of voluntary compliance with, or enforcement of, the hedge restriction.

The Kepplers do not dispute this evidence. Moreover, they stipulated at the summary judgment hearing that there were no genuine issues of material fact for trial.

Instead, they argue on appeal that the trial court improperly discounted numerous instances of non-compliance with the hedge restriction. This does not persuade this court that the trial court erred.

The Kepplers presented evidence of several violations of the hedge restriction. But they failed to present evidence that these violations "obstruct people's views to any significant extent."[40] Instead, the undisputed evidence showed that these violations did not significantly block other homeowner's views.

Abandonment requires violations "material to the overall purpose of the covenant."[41] Because the violations that the Kepplers relied on did not obstruct

---

[37] Id. at 342.

[38] Id.

[39] Id.

[40] Report of Proceedings (June 19, 2015) at 28.

[41] Mountain Park Homeowners Ass'n, 125 Wn.2d at 342.

views, they were not material to the covenant's purpose. Accordingly, the trial court properly concluded that the covenant had not been abandoned.

## REMEDY

Both parties argue that the court abused its discretion in determining the scope of the injunctive remedy. We disagree with both parties.

"Trial courts have broad discretionary power to fashion injunctive relief to fit the particular circumstances of the case."[42] A trial court abuses its discretion if its "decision is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'"[43] A decision is manifestly unreasonable "if it is outside the range of acceptable choices, given the facts and the applicable legal standard."[44] A decision is based on untenable grounds "if the factual findings are unsupported by the record."[45] A decision is based on untenable reasons "if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard."[46]

Here, the trial court ordered the Kepplers to remove the hedge on their property. To accomplish this, it ordered them to cut 13 trees on their property to

---

[42] Hoover v. Warner, 189 Wn. App. 509, 528, 358 P.3d 1174 (2015), review denied, 185 Wn.2d 1004 (2016).

[43] State v. Gentry, 183 Wn.2d 749, 761, 356 P.3d 714 (2015) (internal quotation marks omitted) (quoting Wilson v. Horsley, 137 Wn.2d 500, 505, 974 P.2d 316 (1999)).

[44] In re Marriage of Littlefield, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

[45] Id.

[46] Id.

a height of 6 feet or less. This remedy reflects the provisions of the governing restrictive covenant.

The Kepplers argue that this remedy is excessive, because the trial court could have ordered fewer trees removed while still eliminating the hedge. The Kepplers support this argument by citing to The Town of Clyde Hill v. Roisen, where the trial court ordered the homeowner to remove 6 of 13 trees to remove a naturally grown fence.[47] In contrast, in the present case, the court ordered the Kepplers to remove 13 of the 18 trees along their property lines, including all of the largest trees.

Trial courts have broad discretion in shaping the scope of injunctive relief. The fact that another trial court in a different case exercised its discretion differently does not establish that the court here abused its discretion. The Kepplers fail to establish that the trial court's decision was manifestly unreasonable or based on untenable grounds or reasons.

*Cross Appeal*

The Zimmermans cross appeal the scope of the injunction, arguing that the trial court abused its discretion when it did not order the Kepplers to trim branches from trees on neighboring properties that overhang onto the Kepplers' property. We disagree.

In their motion for summary judgment, the Zimmermans failed to support this request for relief with any legal authority. Similarly, the Zimmermans failed to provide any authority in their opening brief to support the proposition that the

---

[47] 111 Wn.2d 912, 915, 767 P.2d 1375 (1989).

12

Kepplers should be required to trim branches that overhang onto their property. And in their reply brief, the Zimmermans' only authority for this proposition is a citation to one of their declarations stating that "'[i]t is commonly understood that responsibility for maintaining trees rests with the property owner who has branches above their property, regardless of where the trunk of the tree is planted.'"[48] This "common understanding" is not legal authority. Accordingly, the court did not abuse its discretion when it denied this requested relief.

## ATTORNEY FEES

The Zimmermans seek attorney fees on appeal. Specifically, they seek attorney fees as sanctions for filing a frivolous appeal and failing to comply with court rules. Because there is no proper basis to award attorney fees, we reject this argument.

Parties in Washington may recover attorney fees if a statute, contract, or recognized ground of equity authorizes the award.[49] Under RAP 18.9(a), "[a]n appellate court may order a party to pay compensatory damages or terms for filing a frivolous appeal."[50] "An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ and that it is so devoid of merit that there is

---

[48] Reply Brief of Cross-Appellants at 2-3 (quoting Clerk's Papers at 173).

[49] LK Operating, LLC v. Collection Grp., LLC, 181 Wn.2d 117, 123, 330 P.3d 190 (2014).

[50] Lutz Tile, Inc. v. Krech, 136 Wn. App. 899, 906, 151 P.3d 219 (2007).

no possibility of reversal."[51] We resolve doubts whether an appeal is frivolous in the appellant's favor.[52]

Under GR 14.1, "A party may not cite as an authority an unpublished opinion of the Court of Appeals."

This appeal was not frivolous. Although the Zimmermans prevailed, for the reasons discussed earlier, the issues in this appeal were debatable and had merit.

Not every violation of GR 14.1 warrants the imposition of sanctions. In a footnote, the Kepplers cited an unpublished decision from this court, but explicitly acknowledged that it is not authority and purported to cite it as "merely a factual example." The Zimmermans fail to show either they or this court have been prejudiced by this violation of GR 14.1. Accordingly, we decline to award the Zimmermans attorney fees as sanctions.

We affirm the trial court's grant of summary judgment to the Zimmermans and its order granting injunctive relief. We deny the request for an award of attorney fees on appeal to the Zimmermans.

_Cox, J._

WE CONCUR:

_Trickey, ACJ_       _Appelwick, J._

---

[51] Id.

[52] Id.