## NOTICE: SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56949-3-II |
| Respondent, | |
| v. | |
| JENNIFER A. RICHARDS, | PUBLISHED OPINION |
| Appellant. | |

GLASGOW, C.J. — Jennifer Richards' dog, Thor, twice bit another dog unprovoked. As a result, Wahkiakum County determined that Thor was a dangerous dog under chapter 16.08 of the Revised Code of Wahkiakum County (RCWC). One evening, Richards left Thor alone and unsecured on her property. The county charged Richards with violating RCWC 16.08.050(F), an ordinance that makes it unlawful for a dangerous dog to be outside a proper enclosure unless the dog is muzzled and restrained by a substantial leash or physically restrained by a responsible person. Neither state statute nor the county code authorizes destruction of the dog without an opportunity to cure a violation like this one.

After a bench trial on stipulated facts, the district court found Richards guilty and imposed the maximum jail time of 364 days. However, the district court told Richards that it would suspend the sentence if Richards were to turn Thor over to animal control the next day.

Richards appealed her conviction and sentence to the superior court, and the superior court affirmed. The superior court granted a stay pending appeal.

No. 56949-3-II

Richards sought discretionary review in this court, arguing that RCWC 16.08.050(F) is void for vagueness, that the statutory definition of a dangerous dog preempts the county's definition, that her conduct did not satisfy the elements of RCWC 16.08.050(F), that she was not subject to punishment under the county code, that the district court abused its discretion by imposing a sentence that forced her to choose between Thor's destruction and jail, and that the sentence was cruel and unusual in violation of the state and federal constitutions. A commissioner of this court granted discretionary review.

We affirm Richards' conviction for a gross misdemeanor under the ordinance, but we remand for the district court to clarify that Richards was not convicted of any violation of the statute. In addition, because the district court imposed a condition on the suspension of Richards' sentence that was untethered from statutory and county code prerequisites to destroying a dangerous dog, we reverse the sentence and remand for resentencing.

FACTS

I. BACKGROUND ON DANGEROUS DOG CODES

The legislature has defined a dog as "dangerous" if the dog was previously found to be potentially dangerous because it injured a human, the owner received notice of that designation, and the dog "again aggressively bites, attacks, or endangers the safety of *humans*." RCW 16.08.070(2)(c) (emphasis added). The two other alternative statutory definitions of a dangerous dog respectively require proof that the dog severely injured a human being or that the dog killed a domestic animal.

In contrast, under the Revised Code of Wahkiakum County, a dog is a "potentially dangerous dog" when, unprovoked, it bites "a human *or a domestic animal* either on public or on

2

No. 56949-3-II

private property." RCWC 16.08.010 (emphasis added). Under the county code, a dog is a "dangerous dog" when the county has previously found it to be a potentially dangerous dog, the owner has received notice of that designation, and "the dog again aggressively bites, attacks[,] or endangers the safety of *humans or domestic animals*." RCWC 16.08.010 (emphasis added).

The Revised Code of Wahkiakum County makes it "unlawful for an owner of a dangerous dog to permit the dog to be outside [a] proper enclosure unless the dog is muzzled and restrained by a substantial chain or leash and under physical restraint of a responsible person," even if the dog is on the dog owner's property. RCWC 16.08.050(F). Unless otherwise specified, any violation of chapter RCWC 16.08 of the county code is a civil infraction with a maximum penalty of $250. RCWC 16.08.090(C). RCWC 16.08.090(B) states, "Any person violating any of the provisions of" RCWC 16.08.050, the county ordinance on dangerous dogs, "shall be subject to the punishments *prescribed by Chapter 16.08 of the Revised Code of Washington*." (Emphasis added.)

Under chapter 16.08 RCW, any "dangerous dog shall be immediately confiscated by an animal control authority if the . . . dog is outside of the dwelling of the owner, or outside of the proper enclosure and not under physical restraint of the responsible person." RCW 16.08.100(1)(d). This subsection requires the animal control authority to give the owner notice of the reason for the confiscation. *Id.* It states that the "animal control authority shall destroy the confiscated dangerous dog . . . *if* any deficiencies required by this subsection are not corrected within twenty days of notification." *Id.* (emphasis added). "In addition, the owner shall be guilty of a gross misdemeanor." *Id.*

The county code also addresses the circumstances when it authorizes impoundment and destruction of a dangerous dog. Upon a violation under county code, the dog is subject to

3

No. 56949-3-II

impoundment. RCWC 16.08.110(A). Alternatively, law enforcement can allow the dog to remain with its owner if the officer reasonably believes "doing so will not endanger the health, safety[,] or property of any person, or endanger the dog." RCWC 16.08.110(B). If the dog is impounded, the owner must be notified. RCWC 16.08.110(C). The owner may redeem the dog from impoundment after paying costs and fees, in addition to providing evidence that they have corrected the violation. RCWC 16.08.110(D).

The animal control authority must hold an impounded dog for at least 96 hours, not including weekends and legal holidays. RCWC 16.08.110(E). If the impounded dog is not redeemed within 96 hours, the animal control authority may have it destroyed in an expeditious and humane manner. *Id.* But the owner may redeem the dog at any time before it is destroyed. *Id.*

The county code otherwise allows immediate destruction of the dog in limited circumstances. The animal control authority may immediately destroy a dog if "a dog is suffering from a serious injury or disease, *and* destroying the dog is in the interest of public health and safety, or in the interest of the dog." RCWC 16.08.110(F) (emphasis added).

## II. FACTUAL BACKGROUND

Richards lived in Wahkiakum County with her daughter, who had a disabling health condition. When Richards' daughter was six years old, Richards introduced a dog named Thor into the family. Richards explained that Thor became her daughter's emotional support animal.

In 2018, the county designated Thor a potentially dangerous dog under its code after Thor bit another dog without provocation. Richards received notice of the designation but did not appeal it.

No. 56949-3-II

About a year later, the county designated Thor a dangerous dog under its code after "Thor again aggressively bit and endangered the safety of" another dog. Suppl. Clerk's Papers (CP) at 168. Richards appealed the dangerous dog designation. The Wahkiakum County District Court upheld the designation after a hearing, finding that Thor met the definition of a dangerous dog in the county code.[1] Richards did not appeal the district court's finding.

### III. CHARGE OF DANGEROUS DOG AT LARGE

In 2020, a deputy sheriff responded to a report of a dangerous dog "running loose." Suppl. CP at 255. The deputy saw Thor unsecured on Richards' property while Richards was away getting medication her daughter urgently needed that evening. The deputy called Richards, and she asked if the deputy "could attempt to secure Thor in her residence." *Id.* The deputy tried unsuccessfully to calm Thor, who had been barking continuously. Thor then lunged at the deputy's waist, "mouth open" and "snapping his jaws." Suppl. CP at 256. After Thor ran behind Richards' home, the deputy called for backup and watched Thor from afar until Richards returned. The deputy did not impound Thor, instead leaving him in Richards' care as authorized under the county code.

Wahkiakum County charged Richards with allowing Thor, who had a dangerous dog designation, to be outside a "proper enclosure" while "neither muzzled nor under the physical restraint of any responsible person." Suppl. CP at 251. The charging document read, "Dangerous Dog at Large is a violation of" RCWC 16.08.050(F) and RCW 16.08.100(1)(d). *Id.* The charging document specified that pursuant to RCWC 16.08.090(B), allowing a dangerous dog to be at large was "punishable by up to 364 days in jail," "a $5,000 fine," or both. *Id.*

---

[1] The same judge presided over the dangerous dog proceeding and Richards' later criminal proceeding.

5

No. 56949-3-II

IV. MOTION TO DISMISS

Before trial, Richards moved to dismiss the charge. First, she argued that she was not subject to any punishment that chapter 16.08 RCW prescribed. She explained that the statutory definition of a dangerous dog did not encompass dogs who bite other animals. Because Thor did not meet the statutory definition, and because RCW 16.08.100(1) applied to dogs deemed dangerous under state law, she could not be guilty of a gross misdemeanor under state law.[2] As a result, procedural "due process and the rule of lenity" meant she could be guilty of only a civil infraction. Suppl. CP at 228. In the alternative, Richards argued that even if she were subject to the punishment RCW 16.08.100(1) prescribed, the local animal control authority would have to give her 20 days to comply with the subsection's requirements before euthanizing Thor.

Second, Richards argued that because Wahkiakum County's definition of a dangerous dog conflicted with the statutory definition, it was preempted. She contended that while chapter 16.08 RCW stated that localities could "impose more restrictive code requirements on dangerous dogs, . . . the threshold determination of whether a dog is 'dangerous' is not subject to alteration at the municipal level, for the phrase 'dangerous dogs' has been explicitly defined by the state legislature." Suppl. CP at 229-230.

After a hearing, the district court denied the motion to dismiss. Framing Richards' argument that she was not subject to punishment under chapter 16.08 RCW as an argument that RCWC 16.08.050(F) was void for vagueness and violated due process, the district court held that

---

[2] RCW 16.08.100(2) states that if a dangerous dog belonging to an owner with a prior conviction under chapter 16.08 RCW "attacks or bites a person or another domestic animal, the dog's owner is guilty of a class C felony." RCW 16.08.100(3) states that if a person's dog "aggressively attacks and causes severe injury or death" to a human being, that owner is guilty of a class C felony. The State did not assert that either of these subsections applied to Richards.

6

No. 56949-3-II

the county code provision was not unconstitutionally vague. The district court explained that the "alleged facts of this case [were] very much akin to a dangerous dog being outside its enclosure and not under restraint of a responsible person as described in RCW 16.08.100(1), which is punishable as a gross misdemeanor." Suppl. CP at 203. Thus, the "sensible, meaningful, and practical interpretation" was that Richards faced a gross misdemeanor charge. *Id.*

Addressing Richards' preemption argument, the district court concluded that the legislature had not preempted the field of dangerous dog management, explicitly or by implication, and that the ordinance did not irreconcilably conflict with its statutory counterpart. The district court reasoned that enforcement was "very much delegated to local control." Suppl. CP at 206. And it reasoned that a "'local ordinance may require more than state law requires where the laws are prohibitive.'" *Id.* (quoting *Rabon v. City of Seattle*, 135 Wn.2d 278, 292, 957 P.2d 621 (1998)).

V. BENCH TRIAL AND SENTENCE

Richards waived her right to a jury trial and underwent a bench trial on stipulated facts. She stipulated that Thor met the definition of a dangerous dog under the county code because, "having been previously found to be potentially dangerous and the owner having received notice of the finding, Thor . . . aggressively bit and endangered the safety of a domestic animal" for the second time. Suppl. CP at 168. The parties stipulated that Thor had not been found to meet the definition of a dangerous dog in any other way. And Richards stipulated that she had "permitted Thor to be outside a proper enclosure," and that at the time, Thor was not muzzled, "restrained by a substantial chain or leash," or "under the physical restraint of a responsible person." *Id.*

The trial court found Richards "guilty of the crime charged." Suppl. CP at 173. Richards had been charged with allowing a dangerous dog to be at large under both the county code, RCWC

7

No. 56949-3-II

16.08.050(F), and state statute, RCW 16.08.100(1)(d). At sentencing, the prosecution recommended that the district court impose the maximum sentence of 364 days in jail and a $5,000 fine, to be served until Richards gave Thor to the local animal control authority so he could be "put down." CP at 66. Richards asked for any sentence to be stayed pending appeal to the Wahkiakum County Superior Court.

The district court imposed the maximum jail time of 364 days. But it told Richards, "You shall not be required to go into custody if you provide written proof that the dog, Thor, has been surrendered . . . by tomorrow at 3:00 p.m." CP at 88. The district court added that if Richards were to fail to surrender Thor by that time, she would have to report to jail and remain there until she surrendered him. Although the district court did not explicitly say Thor would be destroyed upon surrender, it appears that the judge, attorneys, and Richards all understood that Thor would be destroyed. *See* CP at 66 (prosecutor stating that he "didn't get into this job to kill dogs" but "this is what needs to happen"); CP at 79 (Richards stating that she did not think it was "fair that [Thor] would be put down"); CP at 81 (judge stating that "as a practical matter," the punishment would be "a death sentence for an animal").

Richards asked if she could have a week to surrender Thor so that her boyfriend, who was away, would have a chance to say goodbye. The district court denied her request. It said, "Ms. Richards, you've had since . . . April of 2019 to come into compliance with the dangerous dog registration requirements." CP at 89. The district court added, "We are giving you a bit over 24 hours so that you can get your affairs in line, with both your daughter and your pet responsibilities here, and that is how much time the [c]ourt is willing to allow under the circumstances of this case." *Id.*

8

No. 56949-3-II

VI. APPEAL TO SUPERIOR COURT

Richards appealed her conviction and sentence to Wahkiakum County Superior Court and moved for an emergency stay of her sentence. The superior court accepted review and granted an emergency stay pending appeal. The superior court's stay is still in place.

As she had in the district court, Richards argued that she was not subject to any punishment chapter 16.08 RCW prescribed. She added that, in incorporating punishments available under state law, Wahkiakum County had created an unconstitutionally vague ordinance. Richards also maintained her preemption challenge. And Richards argued that "hitching [her] personal freedom to the tormenting choice to kill her and her daughter's dog [was] beyond cruel and unusual" under the federal and state constitutions. CP at 24.

The superior court affirmed Richards' conviction and sentence. Addressing Richards' argument that she was not subject to punishment, the superior court concluded that the charging document established "with specificity the code sections that authorize and impose the specific sentence of the crime charged." CP at 126. It added that there was "no vagueness in the ordinance scheme." *Id.* And the superior court rejected Richards' preemption challenge.

With regard to the sentence, the superior court rejected Richards' argument that the local animal control authority had to give her time to comply with the county code before euthanizing Thor, reasoning that the district court had broad authority to impose conditions on suspending the sentence imposed. Finally, the superior court concluded that Richards' sentence was not cruel under the Washington Constitution.

9

No. 56949-3-II

Richards sought discretionary review in this court of her conviction and sentence. A commissioner of this court granted review under RAP 2.3(d)(2) (significant constitutional question) and (3) (issue of public interest).

ANALYSIS

"RALJ 9.1 governs appellate review of a superior court decision reviewing" a district court decision. *State v. Brokman*, 84 Wn. App. 848, 850, 930 P.2d 354 (1997). We review the district court decision "to determine whether that court has committed any errors of law," accepting any "factual determinations supported by substantial evidence." RALJ 9.1(a)-(b).

I. CONSTITUTIONAL CHALLENGES

The constitutionality of an ordinance is a question of law that we review de novo. *See City of Spokane v. Neff*, 152 Wn.2d 85, 88, 93 P.3d 158 (2004). We interpret ordinances using the same rules of statutory construction we employ for statutes. *City of Spokane v. Douglass*, 115 Wn.2d 171, 177, 795 P.2d 693 (1990). We presume an ordinance is constitutional, and the party challenging it must prove that "the ordinance is unconstitutional beyond a reasonable doubt." *Id.*

A.    Vagueness

Richards suggests that RCWC 16.08.050(F) is void for vagueness. She argues that there is "ambiguity and lack of notice to the public . . . that a violation of" the ordinance is a "gross misdemeanor." Appellant's Br. at 22. And she argues that the "lack of procedural due process" means that this court should decriminalize the ordinance. *Id.* at 24. We disagree.

As an initial matter, when we evaluate "a void-for-vagueness challenge, we must determine whether the challenged [ordinance] involves First Amendment rights." *In re Pers. Restraint of Troupe*, 4 Wn. App. 2d 715, 723-24, 423 P.3d 878 (2018). If the challenge does not implicate First

10

No. 56949-3-II

Amendment rights, we evaluate the ordinance as applied to the particular facts of the case. *Id.* at 724. Richards does not argue that this case implicates her First Amendment rights, so we interpret her challenge as an as-applied challenge.

The due process clause of the Fourteenth Amendment to the United States Constitution "requires that citizens be afforded fair warning of proscribed conduct." *Douglass*, 115 Wn.2d at 178. "To avoid unconstitutional vagueness" in violation of the due process clause, an ordinance must both "define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited," and "establish standards to permit police to enforce the law in a nonarbitrary, nondiscriminatory manner." *Neff*, 152 Wn.2d at 88-89.

In determining whether an ordinance is sufficiently definite, we consider "the context of the entire enactment" and we give the language "a sensible, meaningful, and practical interpretation." *Douglass*, 115 Wn.2d at 180. An ordinance fails the definiteness requirement "'when it forbids conduct in terms so vague that'" ordinary people "'must guess at its meaning and differ as to its application.'" *Id.* at 179 (quoting *Burien Bark Supply v. King County*, 106 Wn.2d 868, 871, 725 P.2d 994 (1986)). But this test "does not demand impossible standards of specificity or absolute agreement." *Id.* If ordinary people can generally "understand what the ordinance proscribes, notwithstanding some possible areas of disagreement, the ordinance is sufficiently definite." *Id.* And we will not conclude that an ordinance is void for vagueness simply because we believe it "could have been drafted with greater precision." *Id.*

In determining whether an ordinance provides adequate standards for enforcement, we ask whether it "proscribes conduct by resort to 'inherently subjective terms.'" *Id.* at 181 (quoting *State v. Maciolek*, 101 Wn.2d 259, 267, 676 P.2d 996 (1984)). But the "fact that an ordinance may

11

No. 56949-3-II

require a subjective evaluation by a police officer . . . does not mean the ordinance is unconstitutional." *Id.* Rather, the ordinance "is unconstitutional only if it invites an inordinate amount of police discretion." *Id.*

For example, in *State v. Harrington*, Division Three held that the term "extreme mental distress" in the first degree kidnapping statute did not make the statute unconstitutionally vague as applied to the defendant's conduct. 181 Wn. App. 805, 828, 333 P.3d 410 (2014). The statute provided that a "person is guilty of" first degree kidnapping if they intentionally abduct "another person with intent . . . [t]o inflict extreme mental distress." RCW 9A.40.020(1)(d). The court reasoned that while the phrase "'extreme mental distress' carries some uncertainty," there was "little ambiguity in the context of the distress" the defendant imposed on his former wife when he threatened to kill her by pressing a gun to her forehead. *Harrington*, 181 Wn. App. at 828.

In contrast, in *Neff*, the Washington Supreme Court held that a municipal ordinance was void for vagueness where the ordinance stated that, in determining whether a person had manifested "'the purpose of'" selling "'an act of prostitution,'" law enforcement could consider whether the person was "'a known prostitute.'" 152 Wn.2d at 87 (quoting former SPOKANE MUNICIPAL CODE 10.06.030(C), *repealed by* Spokane Ordinance C36289 (Oct. 3, 2022)). The court reasoned that "the unqualified term 'known prostitute' may include anyone from a person with a recent conviction for prostitution to a person who is simply loitering on a street where prostitution occurs," so the ordinance invited "an inordinate amount of police discretion." *Id.* at 91.

Here, Richards has not demonstrated beyond a reasonable doubt that RCWC 16.08.050(F) is void for vagueness. As an initial matter, the due process clause focuses on whether citizens have

12

No. 56949-3-II

"fair warning of proscribed *conduct*." *Douglass*, 115 Wn.2d at 178 (emphasis added). The applicable legal test focuses on whether a person can understand what conduct is prohibited. *See id.* Therefore, to the extent that Richards argues that a due process violation occurred because the county code does not make it clear that a person who violates RCWC 16.08.050(F) commits a gross misdemeanor, her argument fails.

Additionally, the language of this ordinance is sufficiently definite. The ordinance states, "It is unlawful for an owner of a dangerous dog to permit the dog to be outside the proper enclosure unless the dog is muzzled and restrained by a substantial chain or leash and under physical restraint of a responsible person." RCWC 16.08.050(F). As explained above, the county code specifies that a dog is a "dangerous dog" when the county has previously found it to be a potentially dangerous dog, the owner has received notice of that designation, and "the dog again aggressively bites, attacks[,] or endangers the safety of humans or domestic animals." RCWC 16.08.010. The chapter also defines a "proper enclosure" as a "securely enclosed and locked pen or structure[] suitable to prevent the entry of young children and designed to prevent the animal from escaping," specifying that the "pen or structure" must "have secure sides and a secure top." *Id.* The remainder of the language is specific enough to give the owner of a dangerous dog notice of what they must do when the dog is outside a proper enclosure, even if there could potentially be disagreement about terms like "substantial" and "physical restraint." Overall, the ordinance defines the prohibited conduct more precisely than the statute Division Three upheld in *Harrington*.

Finally, the ordinance provides adequate standards for enforcement. Unlike the term "known prostitute" in *Neff*, which gave officers broad discretion in deciding who had violated the ordinance, this ordinance limits officers' discretion. *Neff*, 152 Wn.2d at 91. It directs officers to

13

No. 56949-3-II

focus on dogs the county has designated as dangerous. And within that category, rather than simply directing officers to focus on dangerous dogs who are unrestrained, the ordinance directs officers to focus on dangerous dogs who are not restrained by particular defined methods.

We hold that RCWC 16.08.050(F) is not void for vagueness.

B.      Conflict Preemption

Richards argues that Wahkiakum County's definition of a dangerous dog conflicts with the statutory definition of a dangerous dog in violation of article XI, section 11 of the Washington Constitution. She contends that therefore, "the entire regulatory framework under which the [c]ounty adjudicates dangerousness" is unconstitutional and no conviction under "RCWC 16.08.050(F) can stand." Appellant's Br. at 18. We hold that Wahkiakum County's definition does not unconstitutionally conflict with the state's definition.

"Any county . . . may make and enforce within its limits all such local police, sanitary[,] and other regulations as are not in conflict with general laws." WASH. CONST. art. XI, § 11. Under this section, a county's "'police power is broad, encompassing all those measures which bear a reasonable and substantial relation to promotion of the general welfare of the people.'" *Emerald Enters., LLC v. Clark County*, 2 Wn. App. 2d 794, 803, 413 P.3d 92 (2018) (quoting *State v. City of Seattle*, 94 Wn.2d 162, 165, 615 P.2d 461 (1980)); *see also* Hugh D. Spitzer, *Municipal Police Power in Washington State*, 75 WASH. L. REV. 495, 497 (2000) ("The police power of local government is, at root, the inherent power of the community to regulate activities for the protection of public health and safety.").

Nevertheless, a "state statute preempts an ordinance if the statute occupies the field or if the statute and the ordinance irreconcilably conflict." *Watson v. City of Seattle*, 189 Wn.2d 149,

14

No. 56949-3-II

171, 401 P.3d 1 (2017). "Field preemption occurs when there is express legislative intent to occupy the entire field, or when such intent is necessarily implied." *Id.* Conflict preemption occurs when the ordinance "directly and irreconcilably conflicts with a state statute." *Rabon v. City of Seattle*, 135 Wn.2d 278, 292, 957 P.2d 621 (1998).

An ordinance irreconcilably conflicts with a state statute where the ordinance authorizes what the legislature has forbidden or the ordinance forbids what the legislature has explicitly authorized, licensed, or required. *State v. Kirwin*, 165 Wn.2d 818, 825-26, 203 P.3d 1044 (2009). We will not find preemption if "the two enactments can be harmonized." *Rabon*, 135 Wn.2d at 292. Thus, "a local ordinance does not conflict with a state statute in the constitutional sense merely because one prohibits a wider scope of activity than the other." *City of Seattle v. Eze*, 111 Wn.2d 22, 33-34, 759 P.2d 366 (1988) (holding that there was no conflict between an ordinance and a statute criminalizing disruptive conduct on buses because neither enactment explicitly permitted any conduct, but rather differed "in terms of the scope of their prohibitions").

For example, in *Rabon*, a dog owner argued that a city ordinance effectively forbidding any possession of dangerous dogs violated article XI, section 11 of the state constitution because a state statute allowed such possession with certain restrictions. 135 Wn.2d at 292. Interpreting provisions in chapter 16.08 RCW, the Washington Supreme Court held that the city ordinance did not conflict with state law. *Id.* at 293-94. The court reasoned that, rather than simply permitting ownership of dangerous dogs, the state statute required owners of dangerous dogs to follow registration requirements, so it was "prohibitory in nature." *Id.* at 293. Therefore, the local ordinance could "go further in its prohibition." *Id.* The court further reasoned that a municipality

15

No. 56949-3-II

exercising its police power "may wish to provide further protection from dangerous or vicious animals." *Id.*

Here, *Rabon* is controlling, so we hold that there is no unconstitutional conflict. Chapter 16.08 RCW was amended after *Rabon*'s publication, but the legislature expressed no intention of undoing *Rabon* or preempting broader or stricter local prohibitions on dangerous dog ownership. *See* H.B. REP. ON SUBSTITUTE S.B. 6635, at 2, 57th Leg., Reg. Sess. (Wash. 2002) (stating that according to *Rabon*, state law on dangerous dogs does not preempt similar local regulations and those regulations "may even be more restrictive"). In this case, the county ordinance designates more dogs as dangerous and thus places greater limits on dog ownership than the statute. So long as *Rabon* remains good law, a local ordinance designed to protect the public from animals can impose broader or stricter prohibitions than state law imposes. The county ordinance defining a dangerous dog concerns public safety, a traditional subject for local government regulation. Therefore, RCWC 16.08.010 does not preempt RCW 16.08.070(2).[3]

### II. CHALLENGES TO RICHARDS' CONVICTION FOR A GROSS MISDEMEANOR

Richards argues that her conduct did not meet the elements for a violation of the county code or of state law.

As stated above, the rules of statutory interpretation apply to ordinances. *Douglass*, 115 Wn.2d at 177. We review questions of statutory interpretation de novo. *Watson*, 189 Wn.2d at 158.

---

[3] For the first time in her reply brief, Richards raises a field preemption claim, suggesting that through chapter 16.08 RCW, the legislature has occupied the field of dangerous dog regulation. But an "issue raised and argued for the first time in a reply brief is too late to warrant consideration." *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). We therefore decline to consider Richards' field preemption claim.

No. 56949-3-II

Our primary objective in "interpreting an ordinance is to 'ascertain and carry out the [legislative body]'s intent' by giving effect to the ordinance's 'plain meaning.'" *Id.* (quoting *Arborwood Idaho, LLC v. City of Kennewick*, 151 Wn.2d 359, 367, 89 P.3d 217 (2004)). We derive intent from plain language, "considering the text of the provision in question, the context . . . in which the provision is found, related provisions, and the . . . scheme as a whole." *State v. Evans*, 177 Wn.2d 186, 192, 298 P.3d 724 (2013).

A.      Violation of RCWC 16.08.050(F)

Richards argues that she did not violate RCWC 16.08.050(F) because the Revised Code of Wahkiakum County adopts elements of state law to define the crime of dangerous dog at large and her conduct did not satisfy those elements. Specifically, Richards notes that Thor is not a dangerous dog under the state statute. And she contends that, under RCW 16.08.100(1), the county was required to prove that it gave her 20 days to comply with the requirements for owning a dangerous dog before convicting her. We disagree.

RCWC 16.08.050(F) states, "It is unlawful for an owner of a dangerous dog to permit the dog to be outside the proper enclosure unless the dog is muzzled and restrained by a substantial chain or leash and under physical restraint of a responsible person." A separate ordinance—RCWC 16.08.090(B)—designates the punishment for the crime of dangerous dog at large. It states that any person who violates RCWC 16.08.050 "shall be subject to the *punishments* prescribed by" chapter 16.08 RCW. RCWC 16.08.090(B) (emphasis added).

The plain language of these ordinances shows that the Wahkiakum Board of County Commissioners did not intend to add elements to RCWC 16.08.050(F) by referencing state law. Rather, the board intended to designate the *punishment for violating* RCWC 16.08.050(F) by

17

No. 56949-3-II

referencing state law. RCWC 16.08.050(F), which defines the *elements* of dangerous dog at large, does not refer to any state statutes. Only RCWC 16.08.090(B), which focuses entirely on penalties, refers to "the punishments prescribed by" chapter 16.08 RCW. Therefore, the county did not have to prove that it gave Richards 20 days to comply with the state law requirements for owning a dangerous dog in order to convict her of violating the county code. And Richards stipulated to the fact that Thor was outside a proper enclosure without a muzzle, without being leashed, and without being restrained by a responsible person, so her conduct plainly violated RCWC 16.08.050(F).

B.     Violation of RCW 16.08.100(1)

The trial court found Richards guilty "of the crime charged" and the complaint charged her with violating the county code *and* RCW 16.08.100(1)(d). Suppl. CP at 173, 251. Richards argues that she did not violate the statute, reasoning that the county "has not and cannot argue" that the conviction is "supported by the stipulated facts." Appellant's Br. at 23 (emphasis omitted). The county does not contend on appeal that Richards violated the statute. We agree that she did not violate the statute.

RCW 16.08.100(1)(d) makes it unlawful for any "dangerous dog" to be "outside of the dwelling of the owner, or outside of the proper enclosure and not under physical restraint of the responsible person." The definition of "dangerous dog" that applies for purposes of RCW 16.08.100 states that a dangerous dog is any dog that severely injures "a *human being* without provocation," "*kills a domestic animal* without provocation while the dog is off the owner's property, or . . . has been previously found to be potentially dangerous because of injury *inflicted on a human*" and "again aggressively bites, attacks, or endangers the safety of *humans*." RCW 16.08.070(2) (emphasis added).

18

No. 56949-3-II

Although Richards was charged with violating RCW 16.08.100(1)(d) and the verdict stated that Richards was "guilty of the crime charged," Suppl. CP at 173, there is insufficient evidence to support a conviction under the statute. Nothing in the record indicates that Thor has ever injured a human being or killed a domestic animal. Therefore, Thor did not meet the statutory definition of a dangerous dog, and Richards cannot be guilty of violating RCW 16.08.100(1)'s requirements for dangerous dog ownership. We remand for the trial court to clarify that Richards was guilty of a crime only under the county code.

### III. CHALLENGES TO RICHARDS' SENTENCE

A.    Gross Misdemeanor

Richards argues that she cannot be punished under RCWC 16.08.090(B) because the ordinance references statutory punishments and none of them apply to her. Richards adds that any ambiguity around whether the statutory punishments apply requires us to find that under the county code, she committed only a civil infraction, not a gross misdemeanor. The county responds that "Richards'[] interpretation that there is no penalty for allowing a dangerous dog" to be "at large is clearly contrary to legislative intent and must therefore be rejected." Resp't's Br. at 25. We agree with the county and hold that a person who violates RCWC 16.08.050(F) commits a gross misdemeanor.

As noted above, RCWC 16.08.090(B) states that any person who violates RCWC 16.08.050 "shall be subject to the punishments prescribed by" chapter 16.08 RCW. In chapter 16.08 RCW, the only statute that prescribes punishments is RCW 16.08.100. Subsection (1), which

19

No. 56949-3-II

defines a similar offense to RCWC 16.08.050, states that a dog owner who commits the offense "shall be guilty of a gross misdemeanor punishable in accordance with RCW 9A.20.021."[4]

Here, the plain language of RCWC 16.08.090(B) demonstrates that the Wahkiakum Board of County Commissioners intended to make the crime of dangerous dog at large punishable as a gross misdemeanor. RCW 16.08.100(1) is the only provision in chapter 16.08 RCW that RCWC 16.08.090(B) could logically reference. And the statute explicitly states that "the owner shall be guilty of a gross misdemeanor." RCW 16.08.100(1). The district court did not err when it concluded Richards was guilty of a gross misdemeanor.

Richards contends that because Thor did not meet the statutory definition of a dangerous dog, no statutory punishment could apply to her, so she could not be guilty of more than an infraction under the county code. The county code states that, unless otherwise provided, any violation of the chapter on potentially dangerous and dangerous dogs is a civil infraction. RCWC 16.08.090(C). But, as explained above, RCWC 16.08.090(B) provides otherwise and incorporates the statutory punishment for a gross misdemeanor. The fact that Thor is not dangerous under state law is therefore irrelevant to whether Richards committed a gross misdemeanor under the county code.

B.      Destruction

Richards argues that the district court could not impose a sentence that forced her to choose between having her dog destroyed and going to jail for 364 days. She contends that while a district court "has broad discretion to impose sentencing conditions tending to prevent future commission

---

[4] Subsections (2) and (3) of RCW 16.08.100 apply, respectively, to owners of dangerous dogs with prior convictions under chapter 16.08 RCW and owners of dogs that cause severe injury or death to human beings. Neither applies here.

No. 56949-3-II

of crimes," it was unjust to order "the relinquishment of Thor as a condition of" avoiding imprisonment. Appellant's Br. at 26-27. And she contends that tying her "personal freedom to the tormenting choice to kill her and her daughter's dog is beyond cruel and unusual" under the federal and state constitutions. *Id.* at 27. The state responds that the district court had authority to impose Richards' sentence under *State v. Deskins*, 180 Wn.2d 68, 322 P.3d 780 (2014). We conclude that the sentence imposed was outside the scope of the district court's discretion.

        1.        <u>State and county dog destruction schemes</u>

After stating that it prohibits unrestrained dangerous dogs, RCW 16.08.100(1) provides that the "owner must pay the costs" of confiscation. The statute then describes the animal control authority's responsibility to notify the owner "that the dog will be destroyed" *if the owner does not correct* "the deficiencies for which the dog was confiscated . . . within twenty days,"* authorizing that destruction only if there is no correction. RCW 16.08.100(1) (emphasis added).

RCWC 16.08.110(A)(1) states that any dangerous dog that is not in compliance with RCWC 16.08.050's requirements is "subject to impoundment and confiscation." "If the dog's owner is identified," the animal control authority has to "promptly serve an impoundment notice" stating "what the owner must do to redeem the dog," the deadline for compliance, and "what will happen to the impounded dog if the owner does not redeem the dog." RCWC 116.08.110(C)(4). An owner may redeem any impounded dog after paying applicable fees and providing evidence that they have corrected the violation. RCWC 116.08.110(D).

The county code allows destruction of a dangerous dog under specific circumstances. It allows destruction when an owner does not redeem an impounded dog within 96 hours. RCWC 16.08.110(E). And it allows immediate destruction when "a dog is suffering from a serious injury

21

No. 56949-3-II

or disease, *and* destroying the dog is in the interest of public health and safety, or in the interest of the dog." RCWC 16.08.110(F) (emphasis added). The code does not authorize destroying a dog in any other instance.

2.  The district court's discretion

We review sentencing conditions for abuse of discretion. *Deskins*, 180 Wn.2d at 77. It is an abuse of discretion for a trial court to exceed its statutory authority. *See Cowan v. Cowan*, No. 83082-1-I, slip op. at 20 (Wash. Ct. App. Aug. 28, 2023);[5] *State v. Kerow*, 192 Wn. App. 843, 846, 368 P.3d 260 (2016).

A district court may impose a "sentence by suspending all or a portion of the defendant's sentence." RCW 3.66.067. With exceptions that do not apply here, RCW 3.66.068(1) gives a district court "continuing jurisdiction and authority to suspend the execution of all or any part of its sentence upon stated terms." *See also State v. Williams*, 97 Wn. App. 257, 262, 983 P.2d 687 (1999).

District courts "have a great deal of discretion when setting probation conditions for misdemeanors and are not restricted by the Sentencing Reform Act . . . which applies only to felonies." *Deskins*, 180 Wn.2d at 78. A district court may impose "conditions that bear a reasonable relation to the defendant's duty to make restitution or that tend to prevent the future commission of crimes." *Williams*, 97 Wn. App. at 263. For example, in *Deskins*, the Washington Supreme Court upheld a probationary condition prohibiting a defendant convicted of animal cruelty from owning or living with animals. 180 Wn.2d at 79. The court reasoned that "the trial court used its discretion and found that letting [the defendant] own or live with animals could result in future

---

[5] https://www.courts.wa.gov/opinions/pdf/830821.pdf.

No. 56949-3-II

crimes." *Id.* Although the defendant argued that the animal cruelty statute did not give the trial court "the authority to prohibit living with animals during the probationary period," the court explained that the statute *ensured* trial courts would prohibit ownership in certain cases but did not *prevent* trial courts from prohibiting ownership in others. *Id.* at 78-79.

While a district court's sentencing discretion is broad, it is not limitless. As our commissioner pointed out in her ruling granting discretionary review, *Deskins* does not directly address whether a district court can impose a condition on a suspended sentence that contradicts the requirements of a statute or ordinance. Both RCW 16.08.100(1) and RCWC 16.08.110(F) require certain events to take place before a dog can be destroyed, including an opportunity to cure the violation. The district court's condition on the suspended sentence is untethered from these limitations that the legislature and county legislative body adopted. In contrast, the condition in *Deskins* did not contradict express requirements or prerequisites in the animal cruelty statute.

In other contexts, the Washington Supreme Court has noted that a district court's authority in enforcing conditions on a suspended sentence is limited by what the legislature has authorized. *See State v. Granath*, 190 Wn.2d 548, 557, 415 P.3d 1179 (2018). And a court "'ought not to attempt to do indirectly what it could not do directly.'" *Ewing v. City of Seattle*, 55 Wash. 229, 236, 104 P. 259 (1909) (quoting *New Orleans Waterworks v. New Orleans*, 164 U.S. 471, 481, 17 S. Ct. 161, 41 L. Ed. 518 (1896)); *see also Pierce County v. State*, 159 Wn.2d 16, 48, 148 P.3d 1002 (2006).

It is true that the county code does not specify whether the state or county procedures apply when a dog owner violates RCWC 16.08.050. RCWC 16.08.090(B) states that such a dog owner "shall be subject to the *punishments* prescribed by" chapter 16.08 RCW. (Emphasis added.) But it

23

No. 56949-3-II

is unclear whether the provision of RCW 16.08.100(1), authorizing destruction, is a punishment for the owner, a regulation the animal control authority must follow, or both. And while it would be logical for the county code provisions about destruction to apply, RCWC 16.08.090(B) does not specifically reference them as part of *punishment* to be imposed for a code violation related to a dangerous dog.

Regardless, neither the statute nor the county code permitted the animal control authority to destroy Thor without Richards' permission unless it gave Richards a chance to cure the violation of RCWC 16.08.050(F). The record does not show that the animal control authority confiscated Thor, gave Richards notice of the reasons for the confiscation, and then gave Richards 20 days to correct the deficiencies, as RCW 16.08.100(1) requires. Nor does the record show that Thor was confiscated and Richards failed to redeem him by paying fees and providing evidence of compliance with the county code within 96 hours under RCWC 116.08.110(D) and (E). And the record does not show that Thor was "suffering from a serious injury or disease" *and* that destroying Thor immediately was "in the interest of public health and safety," as RCWC 16.08.110(F) requires.

While the crime of dangerous dog at large is a gross misdemeanor, under the plain language of RCW 16.08.100(1) and RCWC 16.08.110, Thor is not subject to destruction as a direct punishment for Richards' violation of the ordinance until the express prerequisites have been met. The district court acted outside the scope of its discretion by imposing a condition for achieving a suspended sentence that was untethered from these state and county laws. The district court, therefore, abused its discretion when it imposed Richards' sentence.

No. 56949-3-II

Because there is no evidence in the record that the district court would have imposed the 364-day term of confinement without the condition allowing suspension of a sentence, we reverse and remand for a new sentencing hearing. Given that we remand, we need not reach Richards' constitutional argument that the punishment was cruel and unusual.

CONCLUSION

We affirm Richards' conviction of a gross misdemeanor under the ordinance, but we remand for the district court to clarify that Richards was not convicted of any violation of the statute. Because the district court imposed a condition on the suspension of Richards' sentence that was untethered from statutory and county code requirements, which was an abuse of discretion, we reverse the sentence and remand for resentencing.

_____
Glasgow, C.J.

We concur:

_____
Maxa, J.

_____
Price, J.

25